Present:   All the Justices

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

v.  Record No. 042411

CHRISTINE B. REMLEY

                    OPINION BY CHIEF JUSTICE LEROY R. HASSELL, SR.
                              September 16, 2005
CRAIG GRIFFIN

v.  Record No. 042445

CHRISTINE B. REMLEY

        FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                  Dean W. Sword, Jr., Judge

                              I.

    In this appeal, we consider whether the circuit court

erred when it denied defendants' motion to set aside a default

judgment that had been entered in favor of the plaintiff.

                              II.

    Plaintiff, Christine B. Remley, filed a motion for

judgment against Craig Griffin and State Farm Mutual

Automobile Insurance Company, which had provided

uninsured/underinsured motorist coverage to her.  Remley

alleged in her motion that she was injured in an automobile

accident as a result of Griffin's negligence.

    Plaintiff served a copy of the notice of motion for

judgment on Griffin personally on March 30, 2004.  Plaintiff

also served a copy of the notice of motion for judgment upon

State Farm's registered agent on April 5, 2004.  Neither Griffin nor State Farm filed timely responsive pleadings to plaintiff's motion for judgment.

On May 3, 2004, plaintiff's counsel, Morris H. Fine, appeared in the circuit court, presented evidence, and obtained a default judgment in the amount of $150,000 with interest and costs against Griffin.  The circuit court erroneously stated in its order:  "ADJUDGED, ORDERED, and DECREED that judgment be and hereby is granted to the plaintiff, Craig Griffin, against the defendant," even though Remley was the plaintiff and Griffin was the defendant.  Also on May 3, State Farm hand-delivered a grounds of defense to the clerk of the circuit court.  That same day, counsel for State Farm propounded interrogatories and requests for production of documents to plaintiff by forwarding the discovery to Fine.  On June 2, 2004, counsel for State Farm forwarded four attorney-issued subpoenas duces tecum to various custodians of plaintiff's medical records.  Counsel for State Farm forwarded copies of this discovery to Fine.

On June 8, 2004, counsel for State Farm forwarded a motion to compel plaintiff to respond to the interrogatories and requests for production of documents because plaintiff had not done so.  Counsel for State Farm certified in his motion to compel that he had "in good faith conferred or attempted to

2

confer with counsel [Fine] in an effort to resolve this dispute without court action."  Also on June 8, 2004, Fine sent the following letter to counsel for State Farm:

"Dear [Mr. Dawson]:

"On May 3, 2004, a default order was entered by Judge Sword.  Since 21 days has [sic] gone by during which the Court could set aside and 30 days have gone by without an appeal, demand is hereby made to pay in accordance with the contract.  I enclose a certified copy of the Order entered.

"Very truly yours,

"[Signed]

"Morris H. Fine"

Relying upon Code § 8.01-428, State Farm filed a motion to set aside the default judgment on June 10, 2004.  The court conducted an evidentiary hearing, and the following evidence was adduced.  Griffin testified that he was personally served a copy of the notice of motion for judgment on March 30, 2004.  When the accident occurred that is the subject of the default judgment, Griffin was operating his daughter's car.  He knew the name of his daughter's automobile insurance broker.

After Griffin received the notice of motion for judgment, he placed five or six telephone calls to Fine's office.  Griffin stated:

"Five to six times I called.  Someone would just answer.  Messages were left, not like with an answering service but like a voice mail; and on one or two occasions I spoke with somebody.  I guess the

3

secretary, receptionist or somebody, and they explained to me that this was something that was going to be dealt with due to insurance, so I in turn said okay, what should I do. They said well, there's nothing you can do. What you need to do is contact the insurance people if you know them and I said I don't know, but I knew that I knew the information to be given to an insurance person and I did call Mr. Halloran, which at the time after the accident was the representation that I had."

Griffin also spoke to his own lawyer whom he identified as Mr. Halloran. Halloran represented Griffin for traffic offenses related to the accident. Describing his conversation with Halloran, Griffin stated:

"Mr. Halloran . . . said well, it is not really something that I'm involved in because after we were not given any settlement of any kind and they had received a letter he said well, pertaining to that letter that I received from the insurance company or State Farm that you're not to get any payment. I thought well, if I'm not receiving any, then that was really the end of it."

Griffin described another conversation that he had with an employee of Fine's office:

"I called over to Mr. Fine's office and explained to the lady who answered the phone that she can contact Mr. Halloran who was representing me. He would give her any information that she would need. And, again, I was just told the same as I was before, the insurance company will take care of it as well as -- I'll be honest. State Farm's lady, Ms. Donovan, told me the same thing. This is not my issue of what I need to do. If it was insurance involved then they will handle it. So as far as to what my understanding right now is that it's something different. That's really all I can say in reference to it. I did try to find out what was going on, but I didn't come because it was my assumption that it was going to be dealt with by the

4

insurance people because, like I said, I thought it was all over with."

Griffin spoke with Ms. Donovan, State Farm's representative, after the accident.  Griffin stated:

"I explained to her that I received some papers for a lawsuit.  I didn't give no dollar amount or anything like that.  I explained to her where it came from.  I gave her this case number that I had gotten on a letter from State Farm who had sent me the letter when they had denied my claim for any type of judgment or funds, and I gave her that and she pulled the file up and when she pulled it up she said well, this is an insurance matter really.  I don't know why you're being, you know, brought up on judgment.  She said to me also, as I stated, this will be handled by the insurance people."

Griffin testified that he relied upon Donovan's statement that "the insurance people will deal with this."

Upon consideration of the evidence and argument of counsel, the circuit court found that even though State Farm and Griffin were properly served with notice of the motion for judgment, they did not file responsive pleadings timely.  The court stated that it had entered the default judgment on May 3, 2004, and the court ruled that it lost jurisdiction on May 24, 2004, pursuant to Rule 1:1.

Relying upon Code § 8.01-428, the circuit court corrected the default judgment order to reflect "a scrivener's error." The corrected order identified Remley as the plaintiff.  The court concluded that its act of entering the corrected judgment order did not extend the court's jurisdiction to

5

either grant the defendants leave to file a late grounds of defense or their motion to set aside the default judgment on grounds other than those contained in Code § 8.01-428. State Farm and Griffin appeal.

III.

A.

Code § 8.01-428 states in relevant part:

**"§ 8.01-428. Setting aside default judgments; clerical mistakes; independent actions to relieve party from judgment or proceedings; grounds and time limitations. –**

"A. Default judgments and decrees pro confesso; summary procedure. – Upon motion of the plaintiff or judgment debtor and after reasonable notice to the opposite party, his attorney of record or other agent, the court may set aside a judgment by default or a decree pro confesso upon the following grounds: (i) fraud on the court, (ii) a void judgment, (iii) on proof of an accord and satisfaction. Such motion on the ground of fraud on the court shall be made within two years from the date of the judgment or decree.

"B. Clerical mistakes. – Clerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission may be corrected by the court at any time on its own initiative or upon the motion of any party and after such notice, as the court may order. During the pendency of an appeal, such mistakes may be corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending such mistakes may be corrected with leave of the appellate court.

"C. Failure to notify party or counsel of final order. – If counsel, or a party not represented by counsel, who is not in default in a circuit court is not notified by any means of the

6

entry of a final order and the circuit court is satisfied that such lack of notice (i) did not result from a failure to exercise due diligence on the part of that party and (ii) denied that party an opportunity to file an appeal therefrom, the circuit court may, within sixty days of the entry of such order, grant the party leave to appeal. The computation of time for noting and perfecting an appeal shall run from the entry of such order, and such order shall have no other effect.

Relying upon Code § 8.01-428 and our decision in National Airlines v. Shea, 223 Va. 578, 292 S.E.2d 308 (1982), State Farm and Griffin contend that plaintiff's counsel committed a fraud upon the court and, therefore, the circuit court should have set aside the default judgment. We disagree.

In National Airlines, two passengers who lost their luggage during a trip filed an action against National Airlines, Inc., which was represented by counsel. National Airlines' counsel spoke with plaintiffs' counsel by telephone, and they agreed to a continuance of the trial date.

During a subsequent conversation, counsel for National Airlines informed plaintiffs' counsel that National Airlines was exempt from liability. Counsel for National Airlines requested another extension of the trial date and plaintiffs' counsel agreed. Subsequently, National Airlines' counsel submitted a letter to plaintiffs' counsel and reasserted National Airlines' defense: "I hope that this letter and the Warsaw Convention provide you with sufficient grounds to drop

7

your suit against National.  If so, please let me know.  If not, I understand that you will grant me a further two-week extension in which to respond to your Motion for Judgment." 223 Va. at 581, 292 S.E.2d at 309.

Six days later, plaintiffs' counsel obtained a default judgment against National Airlines in the general district court.  The general district court judge asked plaintiffs' counsel about the defendant's "position" in the litigation, and plaintiffs' counsel did not inform the court about the substance of National Airlines' letter.  Furthermore, plaintiffs' counsel waited until the expiration of the 10-day period for appeal, Code § 16.1-97, and the 30-day period for a new trial, former Code § 16.1-97, to expire.  Then, plaintiffs sought execution by levy on National Airlines' property in Virginia.

We set aside the default judgment that had been entered in favor of the plaintiffs because we concluded that their counsel had committed a fraud upon the court.  We stated:

> "On July 26, 1979, when the district court judge asked Mr. McNamara [plaintiffs' counsel] about the defendant, [the judge] was entitled to a full, fair, and truthful answer.  Mr. McNamara, although he may not have actually agreed to a continuance, knew that [National Airlines] thought that he had. His response was a disingenuous half-truth.  He had a duty to be aboveboard with the court and fair with opposing counsel.  Further, Mr. McNamara failed to call the court's attention to the applicability of

the Warsaw Convention, which he knew to be adverse
to his clients' position."

223 Va. at 582-83, 292 S.E.2d at 310.

Additionally, we have stated that "[f]ew courts have discussed the factors that must be proven when deciding whether a fraud has been committed upon a court.  However, a controlling factor is 'whether the misconduct tampers with the judicial machinery and subverts the integrity of the court itself.' "  Owens-Corning Fiberglas Corp. v. Watson, 243 Va. 128, 142, 413 S.E.2d 630, 638 (1992).

In Jones v. Willard, 224 Va. 602, 607, 299 S.E.2d 504, 508 (1983), we stated that, "[t]he judgment of a court, procured by intrinsic fraud, i.e., by perjury, forged documents, or other incidents of trial related to issues material to the judgment, is voidable by direct attack at any time before the judgment becomes final; the judgment of a court, procured by extrinsic fraud, i.e., by conduct which prevents a fair submission of the controversy to the court, is void and subject to attack, direct or collateral, at any time."  Accord Rowe v. Coal Corp., 197 Va. 136, 143, 87 S.E.2d 763, 767-68 (1955); O'Neill v. Cole, 194 Va. 50, 56-57, 72 S.E.2d 382, 385-86 (1952); McClung v. Folks, 126 Va. 259, 268-74, 101 S.E. 345, 347-49 (1919).

In the present appeal, unlike the facts in National Airlines, plaintiff's counsel, Fine, did not commit a fraud upon the court. Fine's acts, which we do not approve or condone, did not hinder, affect, or impair the ability of State Farm or Griffin to respond timely to the notice of motion for judgment. State Farm was served with the notice of motion for judgment and simply failed to respond timely. And, we note that Griffin actually spoke to State Farm's representative and informed her that he had been served with a notice of motion for judgment.

Even though Griffin made numerous telephone calls to Fine's office, and a receptionist "explained to [him] that this was something that was going to be dealt with due to insurance," these acts do not constitute a fraud upon a court. Whatever inferences might arise from the conversation between Griffin and Fine's employee do not constitute misconduct that tampered with the judiciary's machinery and subverted the integrity of the court itself. And, we note that the circuit court found that Fine had not perpetrated a fraud upon that court.

### B.

We also reject the defendants' contention that plaintiff committed acts of actual or constructive fraud upon them. We have held that "a litigant who prosecutes a cause of action

10

for actual fraud must prove by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." Prospect Development Co. v. Bershader, 258 Va. 75, 85, 515 S.E.2d 291, 297 (1999) (emphasis added) (quoting Bryant v. Peckinpaugh, 241 Va. 172, 175, 400 S.E.2d 201, 203 (1991)); Cohn v. Knowledge Connections, Inc., 266 Va. 362, 367, 585 S.E.2d 578, 581 (2003); Davis v. Marshall Homes, Inc., 265 Va. 159, 165, 576 S.E.2d 504, 506 (2003); Winn v. Aleda Construction Co., 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984).

Plaintiff's counsel did not commit an act of actual fraud because Griffin did not rely upon any statement made by Fine's receptionist. Griffin testified that Fine's receptionist told him that what he needed to do was to "contact the insurance people if you know them." Griffin also testified that he knew the name of his daughter's insurance broker who was involved in the issuance of the automobile liability policy for the vehicle that Griffin operated when the accident occurred. And, just as significant, after Griffin spoke to someone in Fine's office, Griffin also spoke to an employee of State Farm. As we have already noted, Griffin testified as follows:

11

"I called over to Mr. Fine's office and explained to the lady who answered the phone that she can contact Mr. Halloran who was representing me.  He would give her any information that she would need.  And, again, I was just told the same as I was before, the insurance company will take care of it as well as – I'll be honest.  State Farm's lady, Ms. Donovan, told me the same thing."

Griffin also stated:

"I explained [to Donovan, State Farm's employee], that I received some papers for a lawsuit.  I didn't give no dollar amount or anything like that.  I explained to her where it came from.  I gave her this case number that I had gotten on a letter from State Farm who had sent me the letter when they had denied my claim for any type of judgment or funds, and I gave her that and she pulled the file up and when she pulled it up she said well, this is an insurance matter really.  I don't know why you're being, you know, brought up on judgment.  She said to me also, as I stated, this will be handled by the insurance people."

And, Griffin testified that he relied upon Donovan's statements.

In Prospect Development Co., we also discussed the elements of a cause of action for constructive fraud.  We stated:

" 'The elements of a cause of action for constructive fraud are a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation.' Evaluation Research Corp. v. Alequin, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994); accord Nationwide Mut. Ins. Co. v. Hargraves, 242 Va. 88, 92, 405 S.E.2d 848, 851 (1991); Kitchen v. Throckmorton, 223 Va. 164, 171, 286 S.E.2d 673, 676 (1982). Additionally, '[a] finding of . . . constructive fraud requires clear

12

and convincing evidence that one has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon this representation. Alequin, 247 Va. at 148, 439 S.E.2d at 390.' Mortarino v. Consultant Eng. Services, 251 Va. 289, 295, 467 S.E.2d 778, 782 (1996)."

258 Va. at 86, 515 S.E.2d at 297 (quoting Blair Construction, Inc. v. Weatherford, 253 Va. 343, 346-47, 485 S.E.2d 137, 138-39 (1997)).

State Farm and Griffin cannot establish the elements of a cause of action for constructive fraud. The record is simply devoid of clear and convincing evidence that would permit a finder of fact to conclude that Griffin relied upon statements of Fine's receptionist.

C.

The judgment that the circuit court entered on May 3, 2004 contained an error because the order stated that "judgment be and hereby is granted to the plaintiff, Craig Griffin, against the defendant, in the sum of . . . $150,000.00" even though the plaintiff was Remley. The circuit court, relying upon Code § 8.01-428, entered a corrected judgment order dated June 16, 2004 that granted judgment "to the plaintiff, Christine B. Remley, against the defendant, Craig Griffin, in the sum of . . . $150,000.00."

State Farm and Griffin argue that even though Code § 8.01-428(B) authorizes a court to correct a clerical error

13

in a judgment order at any time on its own initiative or upon motion of any party and after such notice as the court may order, the error in the default judgment dated May 3, 2004 actually rendered that order a nullity.  Continuing, State Farm and Griffin assert that as "a result of the corrected judgment order, the [circuit court] retained jurisdiction over this [case] for at least an additional 21 days from June 16, 2004."  Thus, State Farm and Griffin contend that the circuit court had jurisdiction to consider their motions to set aside the default judgment.  We disagree.

The error contained in the default judgment dated May 3, 2004 is clearly a clerical error.  We have stated that "[s]crivener's or similar errors in the record, which are demonstrably contradicted by all other documents, are clerical mistakes."  Wellmore Coal Corp. v. Harman Mining Corp., 264 Va. 279, 283, 568 S.E.2d 671, 673 (2002) (quoting Zhou v. Zhou, 38 Va. App. 126, 133, 562 S.E.2d 336, 339 (2002)).  Clerical errors cause the court's record to fail to "speak the truth,"  Id.; School Board of the City of Lynchburg v. Caudill Rowlett Scott, Inc., 237 Va. 550, 555, 379 S.E.2d 319, 322 (1989).

A review of the default judgment order in this case compels the reader to conclude that plaintiff in the case is Christine Remley, and the defendant is Craig Griffin.  The

order also informs the reader that the defendant failed to respond to the motion for judgment in the time required by statute and that the judgment is granted to the plaintiff against the defendant. A clerical error exists in the order because the defendant's name mistakenly modified the word "plaintiff."

### D.

We disagree with State Farm's contention that the circuit court reacquired jurisdiction over all issues relating to plaintiff's motion for judgment when the circuit court entered the order of correction dated June 16, 2004. We hold that when a circuit court exercises jurisdiction pursuant to Code § 8.01-428, such jurisdiction is limited to the specific subjects set forth in paragraphs (A), (B), (C), or (D) of Code § 8.01-428. Once a court obtains jurisdiction pursuant to Code § 8.01-428, the court is not authorized to consider any issues that are not specifically set forth in this statute.

There are specific policy reasons that favor certainty of results in judicial proceedings, and we attach a high degree of finality to judgments, whether obtained by default or otherwise. See McEwen Lumber v. Lipscomb Bros. Lumber, 234 Va. 243, 247, 360 S.E.2d 845, 848 (1987). And, "we have consistently construed Code § 8.01-428 and its predecessors, which create exceptions to the finality of judgments,

15

narrowly."  Id.; see Basile v. American Filter Service, Inc.,
231 Va. 34, 37, 340 S.E.2d 800, 802 (1986).  Simply stated,
Code § 8.01-428, which provides certain narrow grants of power
to courts, does not confer upon a court unlimited authority to
reconsider final judgments.

Contrary to State Farm's argument, Rule 1:9[*] of this
Court, which allows a court to extend the time in which
certain pleadings may be filed, does not authorize a circuit
court to reacquire jurisdiction once that jurisdiction has
been lost.

IV.

Finding no merit in the defendants' contentions, we will
affirm the judgment of the circuit court.

Affirmed.

---

[*] Rule 1:9 states:
   "**Discretion of Court.**
   "All steps and procedures in the clerk's office
touching the filing of pleadings and the maturing of
suits or actions may be reviewed and corrected by
the court.
   "The time allowed for filing pleadings may be
extended by the court in its discretion and such
extension may be granted although the time fixed
already has expired; but the time fixed for the
filing of a motion challenging the venue shall in no
case be extended except to the extent permitted by
§ 8.01-264."

16