COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, McClanahan and Retired Judge Swersky[*]
Argued by teleconference


T.S.G.
                                                          OPINION BY
v.      Record No. 2433-07-2              JUDGE ELIZABETH A. McCLANAHAN
                                                     SEPTEMBER 2, 2008
B.A.S.


FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
Leslie M. Osborn, Judge

Charles E. Powers (Batzli Wood & Stiles PC, on brief), for
appellant.

Charles G. Butts, Jr. (Butts & Butts, on brief), for appellee.


In this appeal, T.S.G., the natural mother, challenges the circuit court's order granting the

adoption of her infant child to B.A.S., the maternal grandmother.  Mother contends the circuit

court erred in failing:  (i) to find that grandmother committed fraud upon the court, (ii) to find

that mother revoked her written consent to the adoption, (iii) to consider all of the factors

required by Code § 63.2-1208(D), and (iv) to find that the adoption would be contrary to the

child's best interests.  For the following reasons, we affirm the circuit court's decision.

I.  BACKGROUND

On appeal, "[w]e view the evidence in the 'light most favorable' to the prevailing party in

the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible

therefrom.'"  Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767

---

[*] Retired Judge Alfred D. Swersky took part in the consideration of this case by designation pursuant to Code § 17.1-400(C).

(2005) (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

Mother gave grandmother physical custody of the child (born in 1997) when he was approximately two years old. Since that time, he has continuously lived with grandmother in her home in Mecklenburg County—a period of approximately 9 years. The child has "adjusted well" to living with grandmother. She has "provided him with a loving, stable home environment and has provided for his needs on a daily basis." With grandmother's "support and encouragement," the child has "progressed developmentally, educationally and emotionally."

Mother moved to Georgia after giving custody of the child to grandmother. For the last several years, mother has lived in North Carolina. She has continued to have contact with the child on a regular basis, but does not visit him in Virginia. Instead, grandmother takes the child to visit mother in North Carolina. Mother has never paid child support to grandmother. Mother has also never been to the elementary school where the child attends.

The child's father, whose location is unknown, has had no contact with the child since he was three years old.

Mother and grandmother discussed the possibility of grandmother adopting the child as early as 2004. Sometime in 2006, grandmother had her attorney prepare an adoption consent form for mother's execution, after which grandmother delivered it to mother in North Carolina. The document specifically provided that mother did thereby "consent that [the child] be adopted by [grandmother] and that [grandmother] be vested with all the rights, powers, and privileges with reference to said child as are provided by law." In December 2006, mother signed the document, which was duly notarized, and then returned it to grandmother.

On May 10, 2007, grandmother filed with the circuit court, pursuant to Code § 63.2-1200 *et seq.*, a petition for adoption of the child, mother's written consent, and an affidavit for an order

of publication for the purpose of effecting constructive service on the child's father.[1] The following day, the court entered the order of publication and an order of reference directing the Mecklenburg County Department of Social Services (DSS) to conduct an investigation of the matter and then report to the court, pursuant to Code § 63.2-1208. Subsequently, the order of publication was completed, and DSS filed its report with the court. In the report, DSS concluded that the adoption would be in the child's best interests and, therefore, recommended that the adoption be approved.

On September 11, 2007, the circuit court heard evidence on grandmother's petition at an *ore tenus* hearing, consisting of grandmother's testimony. Grandmother's counsel also advised the court at that time that mother had recently filed a petition seeking custody of the child, which was pending in the Mecklenburg County Juvenile and Domestic Relations District Court (JDR court), and was scheduled for a hearing in two days. Following the *ore tenus* hearing, the circuit court entered a final order granting grandmother's petition to adopt the child.

The same day, mother filed a motion to vacate the final order of adoption based on fraud, along with a motion to enjoin sending the order to the Commissioner of Public Welfare. More specifically, in support of her motions, mother alleged that, after executing the consent to the adoption, she asked grandmother to destroy it, that grandmother subsequently told mother that she destroyed the document, that grandmother, instead, presented the consent to the court with her petition for adoption, and that grandmother thereby committed fraud upon the court.

---

[1] Code § 63.2-1203 sets forth the alternative requirements for service of process of a petition for adoption upon "any person or agency whose consent is required [but] is withheld contrary to the best interests of the child . . . or is unobtainable." Upon completion of the service, "the circuit court may grant the petition without such consent." Id. When consent is unobtainable, as with the child's father in the instant case, service may be completed by execution of an order of publication against that person. Code § 63.2-1203(A).

On September 14, 2007, the circuit court heard evidence on mother's motions at an *ore tenus* hearing. Both mother and grandmother testified on their own behalf. Each of them also called a number of other witnesses who testified at the hearing. The court found that mother failed to prove her allegations of fraud. In doing so, the court also specifically found that mother was not a credible witness. Accordingly, by order dated September 20, 2007, the court denied mother's motions.

On September 21, 2007, mother filed another motion to vacate the final order of adoption. In this motion, mother asked for reconsideration of the court's denial of her previous motions. She also alleged, in the alternative, that the final order should be vacated because: (i) she had previously revoked her written consent to the adoption; (ii) the court failed to consider all of the factors required by Code § 63.2-1208(D), due to DSS's deficient report to the court regarding its pre-adoption investigation; and (iii) the adoption would be contrary to the child's best interests.

On September 26, 2007, the circuit court held another *ore tenus* hearing, in which mother testified in support of her latest motion to vacate the final order of adoption. Mother's counsel also submitted to the court a written revocation executed by mother indicating she was thereby revoking her written consent to the adoption. The court found that mother had not effectively revoked her consent. The court also found that it was not bound by what it concluded to be a deficiency in DSS's report. Finally, the court rejected mother's argument that the adoption was contrary to the child's best interests. The court thus entered an order denying the motion.

This appeal followed.

## II. ANALYSIS

Challenging the circuit court's order of adoption on appeal, mother raises all four of the issues presented in her motions below, namely: (i) whether grandmother perpetrated a fraud

upon the court; (ii) whether mother revoked her written consent for the adoption; (iii) whether the court failed to consider all of the factors required by Code § 63.2-1208(D), based on DSS's purportedly deficient report on its investigation; and (iv) whether the adoption was contrary to the best interests of the child.[2]

In our review, "we presume the circuit court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Toms, 46 Va. App. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). The circuit court's decision, "'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted)). Therefore, in its capacity as factfinder, the circuit court "retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)). Furthermore, it is well settled that "the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*) (citation omitted). Unlike questions of fact, however, the trial court's statutory interpretations and legal conclusions are subject to *de novo* review. Ipsen v. Moxley, 49 Va. App. 555, 560, 642 S.E.2d 798, 800 (2007).

A. Fraud Upon the Court

First, mother contends the evidence established that grandmother committed fraud upon the circuit court at the time of the initial *ore tenus* hearing. Mother's argument in support of this

---

[2] Mother actually sets forth five questions presented, but we have combined questions two and three, both of which address mother's argument that she revoked her consent for grandmother to adopt the child.

claim is that grandmother submitted to the court mother's written consent to the adoption, while

knowing mother was opposed to the adoption at that time. Moreover, according to mother,

grandmother intentionally failed to advise the court of mother's current attitude (i.e., her "true

intent") regarding the adoption. Thus, mother asserts, grandmother fraudulently misled the court

into granting her petition for adoption. See State Farm Mut. Auto. Ins. Co. v. Remley, 270 Va.

209, 217-18, 618 S.E.2d 316, 320 (2005) (discussing what must be proven when deciding

whether a fraud has been committed upon a court).[3]

This argument is without merit because grandmother's counsel advised the circuit court

during the first *ore tenus* hearing that mother had filed a petition seeking custody of the child,

which was scheduled for a hearing in two days in the JDR court. With this representation to the

circuit court, grandmother made the court aware of mother's adversarial position with

grandmother in regard to the child.

To the extent any doubt remained with the circuit court as to mother's position, such

doubt was removed upon mother's intervention in the adoption proceeding. In addition, as

---

[3] As our Supreme Court stated in State Farm Mut. Auto. Ins. Co., "few courts have discussed the factors that must be proven when deciding whether a fraud has been committed upon a court. However, a controlling factor is whether the misconduct tampers with the judicial machinery and subverts the integrity of the court itself." 270 Va. at 217-18, 618 S.E.2d at 320 (citation and internal quotation marks omitted). The Court then explained that a judgment obtained

> "by intrinsic fraud, i.e., by perjury, forged documents, or other
> incidents of trial related to issues material to the judgment, is
> voidable by direct attack at any time before the judgment becomes
> final; the judgment of a court, procured by extrinsic fraud, i.e., by
> conduct which prevents a fair submission of the controversy to the
> court, is void and subject to attack, direct or collateral, at any
> time."

Id. at 218, 618 S.E.2d at 320 (quoting Jones v. Willard, 224 Va. 602, 607, 299 S.E.2d 504, 508 (1983)).

explained in the following discussion, mother's "true intent" at the time of the adoption hearing did not negate her earlier written consent to the adoption.

Accordingly, the court was not plainly wrong, or without evidence to support its ruling, in denying mother's motions based on her allegations of fraud upon the court.

## B. Revocation of Consent

Second, mother argues that her actions subsequent to her execution of the consent to the adoption constituted a revocation of her consent. In support of this argument, mother points to her continuing contact with the child, her comments to grandmother indicating her opposition to the adoption, her filing of the custody petition in the JDR court, and her written revocation of the consent submitted to the circuit court.

Disposition of this argument is governed by Virginia's statutory scheme for adoptions, set forth in Title 63.2, Chapter 12, of the Code (Code §§ 63.2-1200 through 63.2-1253). Under the "[g]eneral [p]rovisions" portion of Chapter 12 (Article 1), Code § 63.2-1202 addresses the requirements for the birth parent's consent to the proposed adoption, which requirements were met by the written and notarized consent mother provided to grandmother in this case.[4] Code § 63.2-1204, the dispositive statute in this instance, then addresses the circumstances under which such parental consent is revocable. This statute provides, in its entirety: "Parental consent to an adoption shall be revocable prior to the final order of adoption (i) upon proof of fraud or duress or (ii) after placement of the child in an adoptive home, upon written, mutual consent of the birth parents and prospective adoptive parents." Code § 63.2-1204.

---

[4] Code § 63.2-1202(A) provides in relevant part: "No petition for adoption shall be granted, except as hereinafter provided in this section, unless written consent to the proposed adoption is filed with the petition. Such consent shall be in writing, signed under oath and acknowledged before an officer authorized by law to take acknowledgments."

Exception to this provision is made, however, where the required consent is withheld contrary to the best interests of the child, or is unobtainable, as with the father in this case. See Code §§ 63.2-1203 and 63.2-1205; see also, *supra*, footnote 1.

Mother does not contend grandmother engaged in either fraud or duress in relation to mother's execution of the consent to adoption. And we have rejected her argument that grandmother perpetrated a fraud upon the circuit court. There is also no evidence of a revocation of her consent by written, mutual consent between her and grandmother. Thus, mother does not meet the terms of Code § 63.2-1204 for effecting a revocation of her consent.

Mother argues, however, that Code § 63.2-1204 does not apply to Article 4.1 of Chapter 12 (Code §§ 63.2-1242.1, 63.2-1242.2, and 63.2-1242.3), which sets forth the provisions governing a "[c]lose relative adoption," as presented in this case.[5] We disagree.

Just as the title indicates, a close relative adoption under Article 4.1 is an adoption by one of a number of close relatives, including "the child's grandparent." Code § 63.2-1242.1(A). Significantly, the required form of consent from the birth parent for this type of adoption—as, again, we have here with mother's written, notarized consent—is reiterated under this Article in subsection B of Code § 63.2-1242.1: "In a close relative placement the court may accept the written and signed consent of the birth parent(s) that is signed under oath and acknowledged by an officer authorized by law to take such acknowledgements." See Code § 63.2-1202(A) (quoted in relevant part, *supra*, footnote 4).

Code § 63.2-1242.2, the second of the three statutes under Article 4.1, outlines the adoption proceeding where "the child has continuously resided in the home or has been in the continuous physical custody of the prospective adoptive parent(s) who is a close relative for less than three years." This statute has fewer procedural requirements for the adoption proceeding than those for other forms of child adoption under Articles Two, Three, and Four of Chapter 12.

---

[5] Chapter 12 of Title 63.2 addresses five types of adoptions: agency adoptions (Article 2); parental placement adoptions (Article 3); stepparent adoptions (Article 4); close relative adoptions (Article 4.1); and adult adoptions (Article 5).

In turn, Code § 63.2-1242.3, which applies here, outlines the adoption proceeding where the period of time that the child has continuously resided with or been in the physical custody of the close relative, who is seeking to adopt the child, is three or more years. This statute provides, in its entirety, as follows:

> When the child has continuously resided in the home or has been in the continuous physical custody of the prospective adoptive parent(s) who is a close relative for three or more years, the parental placement provisions of this chapter [see Code § 63.2-1230 through Code § 63.2-1240] shall not apply and the adoption proceeding shall commence in the circuit court.
>
> For adoptions under this section:
>
> 1. An order of reference, an investigation and a report [as set forth in Code § 63.2-1208] shall not be made unless the circuit court in its discretion shall require an investigation and report to be made.
>
> 2. The circuit court may omit the probationary period and the interlocutory order [see Code § 63.2-1209 through Code § 63.2-1212] and enter a final order of adoption when the court is of the opinion that the entry of an order would otherwise be proper.
>
> 3. If the circuit court determines the need for an investigation, it shall refer the matter to the local director of the department of social services for an investigation and report, which shall be completed in such time as the circuit court designates.

Code § 63.2-1242.3.

As such, this statute has the fewest procedural requirements for a child adoption proceeding under Chapter 12, with most of those requirements variously mandated for the other forms of child adoption having been removed. This statute, however, does not expressly or implicitly exclude or modify the applicability of Code § 63.2-1204—in its specification of circumstances under which a valid parental consent may be revoked.[6] We thus conclude that

---

[6] Cf. Code § 63.2-1234(1) (providing an additional procedure for revocation of consent in parental placement adoptions "[b]y either consenting birth parent for any reason for up to seven days from its execution").

had the legislature intended to exclude or modify Code § 63.2-1204's applicability to Code § 63.2-1242.3, it would have plainly done so, as it did in excluding from the operation of this statute other general provisions of Chapter 12.[7] To conclude otherwise would amount "'to holding the legislature did not mean what it has actually expressed.'" Barr v. Town & Country Props., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (quoting Watkins v. Hall, 161 Va. 924, 930, 172 S.E. 445, 447 (1934)); see Signal Corp. v. Keane Fed. Sys., 265 Va. 38, 46, 574 S.E.2d 253, 257 (2003) ("In this Commonwealth, courts are required to apply the plain meaning of statutes, and we are not free to add language, nor to ignore language, contained in statutes.").

In sum, mother executed a valid consent for the adoption, pursuant to Code § 63.2-1202, and that consent was not revoked according to the terms of Code § 63.2-1204, which governs the revocation of consent in a close family adoption under Code § 63.2-1242.3, as here presented. See generally, Peter N. Swisher, Lawrence D. Diehl, and James R. Cottrell, Family Law: Theory, Practice, and Forms § 14:8, at 1015-18 (2008) (addressing consent revocation for an adoption).

We therefore affirm the circuit court's ruling that mother did not establish a legal basis for revocation of her consent to the adoption.

### C. DSS's Report and Code § 63.2-1208(D)

Third, mother argues that the circuit court failed to consider all of the "factors" listed in Code § 63.2-1208(D), as it was required to do, before ruling on grandmother's petition for adoption. This omission, according to mother, resulted from DSS's submission of a deficient report to the court following its investigation into the proposed adoption.

---

[7] Like Code § 63.2-1204, other general provisions under Article 1 of Chapter 12 that are not excluded from application to Code § 63.2-1242.3, include, for example, the petition filing requirements under Code § 63.2-1201; the consent requirement, and the exception thereto, under Code §§ 63.2-1202 (as reiterated at Code § 63.2-1242.1(B)) and 63.2-1203; and the best interests of the child standard under Code § 63.2-1205.

In the May 11, 2007 order of reference, the circuit court directed DSS to investigate this matter and report to the court, in accordance with Code § 63.2-1208.[8] This statute sets forth procedures for a child-placing agency to conduct such an investigation and report its findings to the court, along with a recommendation as to the action to be taken by the court on the petition. At the time grandmother's petition was filed, subsection D of Code § 63.2-1208 listed seven areas of inquiry for DSS's investigation.[9]

Mother contends DSS's report was deficient because it failed to address the inquiries required under subparts (iii) and (iv) of Code § 63.2-1208(D), namely: "(iii) why the parents, if living, desire to be relieved of the responsibility for the custody, care, and maintenance of the child, and what their attitude is toward the proposed adoption;" and "(iv) whether the parents have abandoned the child or are morally unfit to have custody over him." The circuit court, on the other hand, found the report was deficient only in failing to address mother's attitude towards the proposed adoption.

---

[8] It was, of course, within the circuit court's discretion, pursuant to Code § 63.2-1242.3, as to whether to order DSS to conduct an investigation and submit a report to the court.

[9] The seven areas of inquiry were as follows:

> (i) whether the petitioner is financially able, except as provided in Chapter 13 (§ 63.2-1300 et seq.) of this title, morally suitable, in satisfactory physical and mental health and a proper person to care for and to train the child; (ii) what the physical and mental condition of the child is; (iii) why the parents, if living, desire to be relieved of the responsibility for the custody, care, and maintenance of the child, and what their attitude is toward the proposed adoption; (iv) whether the parents have abandoned the child or are morally unfit to have custody over him; (v) the circumstances under which the child came to live, and is living, in the physical custody of the petitioner; (vi) whether the child is a suitable child for adoption by the petitioner; (vii) what fees have been paid by the petitioners or on their behalf to persons or agencies that have assisted them in obtaining the child.

Code § 63.2-1208(D) (applicable prior to July 1, 2007).

Nevertheless, while contending the circuit court did not analyze "the [purported] missing factors" under subparts (iii) and (iv) of Code § 63.2-1208(D), mother concedes on brief that "the evidence was sufficient for the trial court to consider these factors." She then explains:

> In particular, by her actions, the evidence is clear that [m]other did not "desire to be relieved of the responsibility for the custody, care, and maintenance" of the child. Further, her "attitude . . . toward the proposed adoption" was that she was against it . . . . There is no evidence that [m]other abandoned the child. To the contrary, she continued to see him on a "regular basis" . . . . Finally, there is no evidence [that mother was] "morally unfit to have custody" of the child.[10]

We agree with mother that these facts were before the circuit court for its consideration. Thus, even assuming *arguendo* that DSS's report was deficient as mother asserts, we reject her argument that such alleged omissions resulted in the court's failure to consider the omitted "factors" set forth in Code § 63.2-1208(D)(iii) and (iv). Because evidence of those areas of inquiry was before the circuit court, we presume in our review that the court "thoroughly weighed all [of this] evidence, considered [these] statutory requirements, and made its determination based on the child's best interests." Toms, 46 Va. App. at 265-66, 616 S.E.2d at 769 (citation and internal quotation marks omitted).[11]

---

[10] As mother indicates on brief, by her intervention in the adoption proceeding, she made clear to the circuit court that she presently did not want to give up her legal rights to her son, and was opposed to the proposed adoption. The circuit court, however, was also presented with the facts regarding mother's abdication of her "responsibility for the custody, care, and maintenance" of the child for the previous eight to nine years during which grandmother had taken on those responsibilities, as indicated in DSS's report, as well as by the testimony of both mother and grandmother. From DSS's report and these parties' testimony, the court was also made aware of the fact that mother had not "abandoned" the child in that she continued to have contact with him. Finally, neither DSS nor any of the witnesses expressly indicated that mother was "morally unfit" to have custody of the child, which, of course, was only one of many factors for the court's consideration under Code § 63.2-1208(D) in determining what was in the child's best interests.

[11] Given this conclusion, we need not address mother's further argument that once the circuit court ordered DSS to conduct the investigation and report to the court, the court was required to consider all of the "factors" listed under Code § 63.2-1208(D) relative to the

D. Best Interests of the Child

Fourth, mother argues the circuit court granted the adoption contrary to the child's best interests. In large part, mother here makes essentially the same arguments addressed in Sections B and C above. She first argues that the trial court did not consider what was in the child's best interests because the court did not take into consideration the fact that she continued to have a relationship with the child, and the fact that she was opposed to the adoption. For the same reasons set forth in Section C, we reject this argument.

Mother then argues that the court failed to consider the child's best interests because her "consent [for the adoption] was seriously in question." For the reasons stated in Section B, this argument is also without merit.

Finally, mother makes the argument that the circuit court did not consider "whether the continuation of [her] relationship with the child was detrimental to the child." That was not a consideration the court was required to make. Previously under Virginia law, Code § 63.2-1205, and its predecessors, required that the court apply the detriment-to-the child standard in an adoption proceeding where a birth parent's consent to the adoption was being withheld—unlike the instant case in light of mother's written consent. See Gooch v. Harris, 52 Va. App. 157, 160-61, 662 S.E.2d 95, 96-97 (2008); Hickman v. Futty, 25 Va. App. 420, 426, 489 S.E.2d 232, 235 (1997). Even that requirement, however, is no longer applicable, with the amendment of Code § 63.2-1205 in 2006. Gooch, 52 Va. App. at 161, 662 S.E.2d at 97.[12]

Instead, in the contest between mother and grandmother in this case, once the circuit court determined that mother's consent was valid, the question was whether the proposed

---

investigation and report, even though, under the express terms of Code § 63.2-1242.3 for this close family adoption, this order was within the court's discretion.

[12] Mother does not argue that the 2006 amendments to Code § 63.2-1205 implicate any constitutional issues in this case. See Goode, 52 Va. App. at 162 n.5, 662 S.E.2d at 97 n.5.

- 13 -

adoption was in the child's best interests.  See <u>Harry v. Fisher</u>, 216 Va. 530, 531, 221 S.E.2d 118, 119 (1976) (explaining that, in the context of former Code § 63.1-225 (now included in parts of §§ 63.2-1202 through 63.2-1205), "when execution of a valid consent for adoption . . . is proved, the natural parents, in a contest with the adoptive parents, will be denied custody of the child, provided the adoptive parents establish by a preponderance of the evidence that the child's best interests will be served if it remains in their custody" (citing <u>Szemler v. Clements</u>, 214 Va. 639, 644-45, 202 S.E.2d 880, 885 (1974))).

III.  CONCLUSION

For these reasons, we affirm the decision of the trial court in granting grandmother's petition for adoption.

<u>Affirmed.</u>