COURT OF APPEALS OF VIRGINIA

Present:  Judges Kelsey, Petty and Senior Judge Bumgardner


DARIUS KEITH CHITTUM

v.     Record No. 0028-11-1

DEANA MARIE HIPPENSTIEL AND
 MARK JOHN HIPPENSTIEL

MEMORANDUM OPINION[*]
PER CURIAM
NOVEMBER 8, 2011


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Junius P. Fulton, III, Judge

(Andrew K. James, on brief), for appellant.

(Jill R. Harris; Kaufman & Canoles, P.C., on brief), for appellees.

(Margaret V. Weaver; Thomas & Associates, P.C., on brief),
Guardian *ad litem* for the minor child.


Darius Keith Chittum (father) appeals an order granting the petition for adoption filed by

Deana Marie Hippenstiel (mother) and Mark John Hippenstiel (stepfather).  Father argues that the

trial court erred by (1) granting the adoption and name change because it was not in the child's best

interests and (2) violating father's due process rights because it failed to make a finding that a

continuing relationship with the child would be detrimental to the child's welfare.  Upon reviewing

the record and briefs of the parties, we conclude that this appeal is without merit.  Accordingly,

we summarily affirm the decision of the trial court.  See Rule 5A:27.

BACKGROUND

"On appeal, '[w]e view the evidence in the light most favorable to the prevailing party in

the circuit court and grant to that party the benefit of all reasonable inferences fairly deducible

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

therefrom.'" T.S.G. v. B.A.S., 52 Va. App. 583, 585, 665 S.E.2d 854, 855 (2008) (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005) (internal quotations and citation omitted)).

So viewed, the evidence proved that mother and father were never married and had one child, born in 2003. Father saw the child for approximately ten minutes when she was one month old. He attempted to see the child approximately one month after the initial meeting, but mother refused his request because he was screaming, yelling, and driving his vehicle erratically up and down the street on which she lived. Father called mother once in 2008, and other than those three occurrences, he has never tried to contact or visit the child. At the time of the hearing, the child was seven years old.

On January 12, 2004, mother was awarded sole legal and physical custody of the child. Father has not filed any petitions for custody or visitation.

Father has a history of substance abuse and domestic violence. He has been incarcerated several times since the child was born. As of the hearing, father had been incarcerated since 2008 for malicious wounding, violation of probation, and assault and battery – third offense.[1] Mother testified that while the parties were dating, father was mentally, physically, and emotionally abusive toward her.

In May 2008, mother and stepfather married. Stepfather has been involved in the child's life since she was one and a half years old, and he is the only father figure that the child knows. On July 6, 2009, mother and stepfather filed their petition for adoption and name change. Father objected. After hearing the evidence and argument, the trial court granted the petition and entered a final adoption order and name change order on December 7, 2010. This appeal followed.

_____

[1] Father's projected release date is in February 2017.

ANALYSIS

Adoption

Father argues that the trial court erred in granting mother and stepfather's petition for adoption. He contends that the adoption is not in the child's best interests and that the trial court violated his due process rights by not finding that a continued relationship with his child would not be a detriment to her.

In 2006, "the General Assembly amended Code § 63.2-1205 to remove the language requiring a finding of detriment to the child to permit adoption without parental consent." Copeland v. Todd, 282 Va. 183, 196, 715 S.E.2d 11, __ (2011) (citing 2006 Acts chs. 825, 848 (effective July 1, 2006)).[2]

In Todd v. Copeland, 55 Va. App. 773, 778, 689 S.E.2d 784, 787 (2010) (emphasis in original), this Court held that

> the Fourteenth Amendment to the United States Constitution requires prospective adoptive parents to prove, by clear and convincing evidence, both that the entry of an adoption order over

[2] Code § 63.2-1205 states:

> In determining whether the valid consent of any person whose consent is required is withheld contrary to the best interests of the child, or is unobtainable, the circuit court or juvenile and domestic relations district court, as the case may be, shall consider whether granting the petition pending before it would be in the best interest of the child. The circuit court or juvenile and domestic relations district court, as the case may be, shall consider all relevant factors, including the birth parent(s)' efforts to obtain or maintain legal and physical custody of the child; whether the birth parent(s) are currently willing and able to assume full custody of the child; whether the birth parent(s)' efforts to assert parental rights were thwarted by other people; the birth parent(s)' ability to care for the child; the age of the child; the quality of any previous relationship between the birth parent(s) and the child and between the birth parent(s) and any other minor children; the duration and suitability of the child's present custodial environment; and the effect of a change of physical custody on the child.

the objection of a nonconsenting parent is in the best interest of the child *and* that a continuing relationship with the birth parent would be detrimental to the child's welfare.

This Court concluded that "a trial court must make a detriment to the child determination, regardless of the language of the relevant statute, before entering an adoption order, in order to protect the Fourteenth Amendment rights of a nonconsenting biological parent." Id. at 790, 689 S.E.2d at 792.

In reaching its conclusion in this case, the trial court reviewed the factors in Code § 63.2-1205, and although it did not specifically use the phrase "detriment to the child," it considered whether a relationship between father and the child would be detrimental to her welfare.

Since the trial court's ruling, the Supreme Court of Virginia issued its opinion in Copeland. The Supreme Court of Virginia acknowledged that "the Constitution requires more than a mere showing of the child's best interests to terminate parental rights." Copeland, 282 Va. at 198, 715 S.E.2d at __. The Supreme Court of Virginia found that "Virginia's statutory scheme for adoption, including Code §§ 63.2-1205 and -1208, defines the best interests of the child in terms that require more expansive analysis than when the contest is between two biological parents." Id. at 199, 715 S.E.2d at __. It concluded that "the Virginia statutory scheme" passes "constitutional due process scrutiny" because the statutes "provide for consideration of parental fitness and detriment to the child," despite the fact that they do not include the phrase "detriment to the child." Id. at 199, 715 S.E.2d at __.

In light of the decision in Copeland, we affirm the trial court's order granting the petition for adoption.

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support

it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

Father argues that his due process rights were violated because the trial court did not make a specific finding that a continuation of the relationship between father and the child would be detrimental to the child's welfare. According to the Supreme Court of Virginia, it was not necessary for the trial court to find that a continued relationship with the father would be detrimental to the child because the factors in Code § 63.2-1205 "focus on *both* the parent and child and therefore compel a court to consider whether a parent's unfitness would be harmful to the child's welfare." Copeland, 282 Va. at 199, 715 S.E.2d at __ (citing Code § 63.2-1205).

The trial court clearly considered father's fitness as a parent and whether a relationship between him and the child would be detrimental to her welfare. The trial court stated that it was concerned about the "great potential of destructive impact on [the child's] sense of security" when father was released from prison in 2017. It further stated that father's "well documented history of violence reflects poorly on his fitness." The trial court also found that father made no attempts to "act as a father to this child." He had only seen the child once. Although father was incarcerated several times since the child's birth, there were times when he was available to pursue a relationship with the child, but did not do so. He did not file a petition for visitation with the courts; instead, he contested paternity when mother sought a custody order in 2004. Father had no relationship with the child, and the trial court found that any future relationship would harm the child.

Father also argues that the adoption was not in the child's best interests and that less drastic measures could have been taken. The trial court reviewed the factors in Code § 63.2-1205 and found that the adoption was in the child's best interests. The trial court dismissed any less drastic measure because it was concerned about the child's well-being if

- 5 -

father was released from prison in 2017 and sought a relationship with the child.  The trial court noted that "this will occur sometime in the future when as a child she's perhaps the most vulnerable because of her teenage years."  Meanwhile, the child was being raised in a "stable family unit" with mother, stepfather who is the man that she considers her father, and her brother.[3]

The trial court heard the evidence presented by both parties and found father to be less credible than mother and stepfather.  The trial court found father's testimony about his relationship with mother and his attempts to visit the child as incredible.  "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony."  Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*).

Therefore, the trial court did not err in granting the petition for adoption and name change.

### Attorney's fees and costs

Mother and stepfather requested that they be awarded their attorney's fees and costs in defending this appeal.  On consideration of the record before us, we deny their request for an award of attorney's fees and costs they incurred on appeal.  See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

### CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed.  Rule 5A:27.

Affirmed.

---

[3] Stepfather has a son from a previous relationship.  There was testimony that the child and his son have a close relationship.

- 6 -