COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Huff, Judges Alston and AtLee
Argued by teleconference

UNPUBLISHED

BARBARA ANNE KEEN

v.        Record No. 0678-17-3

GARY RICKY BARNETT AND
 ANNETTE BARNETT

MEMORANDUM OPINION* BY
CHIEF JUDGE GLEN A. HUFF
DECEMBER 19, 2017

FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
Henry A. Vanover, Judge

Robert M. Galumbeck (Galumbeck & Kegley, Attorneys, on brief),
for appellant.

Penny E. Nimmo (Janice L. Davis, Guardian *ad litem* for minor
child; Broadwell, Gillespie and Nimmo, P.C.; Justice Law Office,
P.C., on brief), for appellees.


Appellant Barbara Anne Keen ("mother") challenges the order of the Circuit Court of

Buchanan County ("trial court") terminating her parental rights and permitting adoption of her

child, B.M.B., by appellees Gary Ricky Barnett and Annette Barnett, the child's paternal

grandparents (collectively, the "grandparents").  On appeal, mother contends that the trial court

erred in ordering a close relative adoption of B.M.B. without her consent and in terminating her

parental rights.  For the following reasons, this Court affirms the trial court's order.

I.  BACKGROUND

"On appeal, '[w]e view the evidence in the "light most favorable" to the prevailing party

in the circuit court and grant to that party the benefit of "all reasonable inferences fairly

deducible therefrom."'" T.S.G. v. B.A.S., 52 Va. App. 583, 585, 665 S.E.2d 854, 855 (2008)

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005)).  So viewed, the evidence is as follows.

B.M.B. was born December 1, 2009.  The grandparents first obtained physical custody of the child in March 2010 following a child abuse and neglect finding against mother in the Buchanan County Juvenile and Domestic Relations District Court ("JDR court").  In its order, the JDR court granted legal custody to the Buchanan County Department of Social Services and physical custody to B.M.B.'s biological father, Joseph Barnett, to be shared with his parents, all of whom lived together in the grandparents' house.  The grandparents later petitioned the JDR court for exclusive physical and legal custody of the child, which was granted by order dated February 13, 2012.  Thus, they have had custody of B.M.B. since he was four months old, and he is now eight years old.

Over four years later, on March 28, 2016, the grandparents filed a petition for a close relative adoption of B.M.B. under Code § 63.2-1242.3 in the trial court.  B.M.B.'s father consented to the adoption.  Mother opposed the petition and refused her consent.  The trial court appointed a guardian *ad litem* for B.M.B., who subsequently filed an answer to the petition indicating her belief that mother withheld her consent contrary to the child's best interests and that adoption by the grandparents would be in the child's best interests.

The trial court held an *ore tenus* hearing on June 8, 2016.  Before hearing evidence, the trial court heard mother's argument that it lacked jurisdiction to grant a close relative adoption pursuant to Code §§ 63.2-1242.1 and -1242.3 because such adoptions require consent by both parents and mother did not consent to the adoption.  The trial court overruled this objection.

The biological father and the grandparents all testified in support of the petition, and mother presented evidence against it.  The evidence established that since entering the grandparents' custody, the child was "in school and flourishing."  The grandparents' home was

"appropriate" for raising B.M.B., and they were financially and physically able to care for the child. Mother was unable to interact with the child during a period of incarceration from August 2011 to August 2014. Following her release, the grandparents permitted mother to have informal supervised visits with B.M.B. several times a month. She has not sought court-ordered custody or visitation, and concedes that she is not in a position to assume custody of B.M.B.

The evidence additionally established that mother was herself adopted by the child's maternal grandparents, who continue to take care of all of mother's affairs including managing her finances. Mother suffers from fetal alcohol syndrome and bi-polar disorder for which she continues to receive medical treatment and psychiatric counseling. Mother is easily stressed and has "problems" being in large crowds, preferring to remain in "small[,] controlled places."

The trial court issued a letter opinion on June 14, 2016, stating that it was "inclined to grant the adoption" based on the evidence presented at the June 8 hearing. Rather than entering a final order, however, the trial court noted:

> [T]he parties have advised they are willing to have an open adoption. *If* this is the case, then it would be proper for your agreement to be drafted, signed and incorporated into your final decree. Therefore, this being the situation, I would direct that the agreement be drawn, signed and incorporated into the decree.

The parties were unable to reach an agreement. Accordingly, on March 28, 2017, the trial court entered a final order granting the grandparents' petition to adopt the child pursuant to Code § 63.2-1242.3. In its order, the trial court specifically found that mother "has withheld her consent to said adoption . . . of said child, contrary to the child's best interests," that "the best interests of said child will be served by such adoption," and that "all applicable statutes have been complied with." This appeal followed.

## II. ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986).

*Assignments of Error 1, 3, and 4*

In mother's first, third, and fourth assignments of error, she contends that the trial court erred in granting the close relative adoption when she did not consent to it. Because the trial court properly found that mother withheld her consent contrary to the child's best interests, this Court affirms the trial court's ruling.

Code §§ 63.2-1242.1 to -1242.3 govern close relative adoptions, which include "an adoption by the child's grandparent[s]." Code § 63.2-1242.1. Close relative adoptions are divided into two categories: those where the child has continuously resided with or in the home of the prospective adoptive parents for less than three years, governed by Code § 63.2-1242.2, and more than three years, governed by Code § 63.2-1242.3. Because B.M.B. has continuously lived with the grandparents and been in their physical custody for over three years, Code § 63.2-1242.3 governs his adoption.

Code § 63.2-1242.3 dispenses with many ordinary adoption requirements in light of the child's extensive time with the prospective adoptive parents. For instance, adoption proceedings under Code § 63.2-1242.3 originate in the circuit court, the parental placement provisions of the adoption chapter (Code §§ 63.2-1233 to -1240) do not apply, and the circuit court may forego an investigation and report as well as omit the probationary period and interlocutory order of adoption.

Code § 63.2-1242.3 does not, however, eliminate the requirement of parental consent. See Code § 63.2-1202(A) ("No petition for adoption shall be granted, except as hereinafter provided in this section, unless written consent to the proposed adoption is filed with the petition."). Code § 63.2-1242.1(B) provides for a streamlined consent process for close relative adoptions, permitting a circuit court to accept a notarized statement of consent rather than the more onerous methods required in other forms of adoption. The biological father executed such a statement of consent in this case, but mother did not.

Code § 63.2-1203(A) provides an avenue for granting an adoption even over a nonconsenting parent's objection if the circuit court determines that "consent is withheld contrary to the best interests of the child as set forth in § 63.2-1205." "We have consistently held that to grant a petition for adoption over a birth parent's objection, there must be more than a mere finding that the adoption would promote the child's best interests." Copeland v. Todd, 282 Va. 183, 197, 715 S.E.2d 11, 19 (2011) (citing Malpass v. Morgan, 213 Va. 393, 398-99, 192 S.E.2d 794, 798–99 (1972)). "Virginia's statutory scheme for adoption, including Code §§ 63.2-1205 and -1208, defines the best interests of the child in terms that require more expansive analysis than when the contest is between two biological parents." Id. at 199, 715 S.E.2d at 20.

Code § 63.2-1205 states:

> In determining whether the valid consent of any person whose consent is required is withheld contrary to the best interests of the child, . . . the circuit court . . . shall consider whether granting the petition pending before it would be in the best interest of the child. The circuit court . . . shall consider all relevant factors, including the birth parent(s)' efforts to obtain or maintain legal and physical custody of the child; whether the birth parent(s) are currently willing and able to assume full custody of the child; whether the birth parent(s)' efforts to assert parental rights were thwarted by other people; the birth parent(s)' ability to care for the child; the age of the child; the quality of any previous relationship between the birth parent(s) and the child and between the birth parent(s) and

- 5 -

any other minor children; the duration and suitability of the child's present custodial environment; and the effect of a change of physical custody on the child.

"The eight factors in Code § 63.2-1205 . . . focus on both the parent and child and therefore compel a court to consider whether a parent's unfitness would be harmful to the child's welfare." Copeland, 282 Va. at 199, 715 S.E.2d at 20. They accordingly "encompass far more than mere consideration of the child's best interests as defined in cases involving a contest between natural parents." Id. at 200, 715 S.E.2d at 20.

In this case, mother had not sought court-ordered custody or visitation with B.M.B. since her release from incarceration. Mother additionally conceded that she was not able to assume custody of the child. Far from thwarting mother's efforts to assert her parental rights, the grandparents actually permitted mother to visit with B.M.B. regularly despite having no legal obligation to do so. Mother continues to receive treatment and medication for fetal alcohol syndrome and bi-polar disorder, has problems with crowds, and continues to have her parents manage her affairs and finances. These facts all indicate that she does not have the ability to care for B.M.B. In contrast, B.M.B. has "flourish[ed]" while living with the grandparents, who are able to care for him and reside in a house suitable for raising a child. Finally, a change in custody from the grandparents would have a detrimental effect on the child because it would disrupt a stable living arrangement that has existed since he was four months old.

Based on this evidence, the trial court's finding that "the best interests of [the] child will be served by [the] adoption" and that "all applicable statutes have been complied with" was not plainly wrong or without evidence to support it. Accordingly, this Court affirms the trial court's final order of adoption.

*Assignment of Error 2*

Mother also contends that the trial court erred in terminating her parental rights. Code § 63.2-1215 explains that an adopted child's birth parents "shall, by final order of adoption, be divested of all legal rights and obligations in respect to the child." Having held that the trial court properly entered a final order of adoption in favor of the grandparents, this Court necessarily concludes that the termination of mother's parental rights regarding B.M.B. as a consequence of the adoption order was not error.

*Attorney Fees*

The grandparents request attorney fees and costs on appeal pursuant to Rule 5A:30(b). This Court's decisions regarding attorney fees and costs are discretionary and are based on its consideration of factors including whether the requesting party prevailed, whether the appeal was frivolous, whether either party generated unnecessary expense or delay in pursuit of its interests, as well as "all the equities of the case." Rule 5A:30(b)(3)-(4); see O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). The case at bar was not frivolous, but instead addressed appropriate issues. Thus, given the equities of this case, this Court declines to award attorney fees to the grandparents.

III. CONCLUSION

For the foregoing reasons, this Court affirms the trial court's order of a close relative adoption of B.M.B. and accompanying termination of mother's parental rights regarding the child.

Affirmed.