Judge Carr.
The defendant Spangler and his sister, the wife of Key, were each entitled to an undivided moiety of a tract of .land descended to them from their father. Spangler was desirous to sell his share, and offered it to different persons. At length he made a contract with the plaintiff M’Mahon, which is in writing, signed and sealed by the parties, and dated the 15th of July, 1819. This contract expresses that Spangler had sold to M’Mahon, “ all his right, title, interest and claim, in and to a certain tract or parcel of land, in the county of Rockingham, on the North river, adjoining Major Robert Grattan, containing by estimation 300 acres, and which formerly belonged to Frederick Spangler, deceased, (a division of which, is hereafter to be made, and it is understood, that when the division is made, the improvements are to be on that, part of the land hereby intended to be secured to the said M’Mahon,) together with all *52 the appurtenances, 8¿c. for and in consideration of the sum °f @2600, to be paid, @700 in hand, @100 by the 19th instant, @400 on the 1st of May, 1820, @300 in a gig and harness worth that amount, by the 1st of October, 1820, @550 by the 1st of October, 1822, and @550 by the 1st of October, 1824;” Spangler to make a deed, after the division should be confirmed by the Court of Chancery. In execution of this contract, the plaintiff gave his bonds, and has paid the @700, (which was a payment in hand,)*the @ 100 and the @ 300. 'A division was made by the commissioners, and Spangler having gotten the part which had the>improvements, delivered it over to the plaintiff who still holds possession of it.' Upon the division, the commissioners found that the whole tract contained only 269 acres; and of this, they considered 119 acres, with the improvements, an equal share. Spangler removed to the State of Ohio, without executing a deed to M’Mahon for the land. He assigned the @400 bond to the defendant Clayton, who sued on it, and recovered judgment. It is to injoin this judgment that the bill is filed.
The grounds of injunction are two: 1st. That there was a mistake made by the scrivener in drawing the agreement, the real contract being, that Spangler sold to M’Mahon, not his interest in the land for @ 2600, but that he sold him 150 acres of land, with the improvements, at @ 174 per acre, making the sum of @ 2600. 2d. That even if the contract be rightly expressed, the whole tract was estimated by both parties at 300 acres, and being found 31 acres deficient, the plaintiff is entitled to a deduction for the deficiency, which ought to come out of the bond first due after the discovery: Spangler answered, denying directly and positively, that there was the slightest error in the written contract; or that he sold by the acre; but that he sold his moiety, whatever it might be, for the gross sum of @2600: that he had given Key a full power to make a deed, and supposed it had been done: that he would make one with all convenient speed.
*53 On a motion to dissolve, the Chancellor considered that the written contract must stand, there being no sufficient evidence of mistake; and ordered, that on <Spa?igler’s executing and tendering to the plaintiff, or filing among the papers in the cause, a deed with a general warranty for the 119 acres of land, the injunction be dissolved. The appeal is from this order.
The first objection taken to the order was, that however the case might be upon the merits, the Chancellor ought not to have dissolved the injunction, upon the tendering a deed to the plaintiff, or filing it with the papers, because this did not give the plaintiff that security and safety on the subject of title, which he was entitled to; that neither the parties, nor the clerk, were judges of the sufficiency of the deed; and that the Chancellor should have refused the motion to dissolve, with leave to renew, when a deed should be filed, and submitted to him for inspection.
I think this objection rather specious than solid. It will be remarked, that there was never any difficulty between the parties, on the subject of title. Though the injunction was dissolved, yet the cause remained in Court. When the deed should be executed, if the defendant tendered it. to the plaintiff, he would of course consult his counsel, and unless he thought it a sufficient deed, would reject it. If he did, the defendant would either make another, according to the requisition of counsel, or he would file the deed he had made, with the clerk, and demand the order of dissolution from him. Suppose the clerk to grant it, and the execution to issue, M’Mahon might instantly apply to the Chancellor by petition, submitting to him the deed, and making his objections; and whether it should be in or out of Term, the Chancellor would examine the deed, and stop the execution at once, if he found it insufficient. Thus, no mischief could result to the plaintiff, and I do not think this objection can be sustained.
We come now to the merits, and first, as to the alieged mistake in the agreement. For the authorities on the *54 subject generally, of admitting parol evidence in a case of this kind, I refer to Ratcliffe v. Allison, 3 Rand. 537, not long since decided. The general rule is, that parol evidence cannot be admitted to contradict, explain, or alter, a written agreement; but, may be received to prove fraud, surprise or mistake in the execution of it. But the books all tell us, that in this latter case, the evidence must be strong and clear. The solemn acts of the parties, under their hands and seals, are not to be blown away by loose and vague conversations. In the case before us, the bill asserts that the scrivener, having first written the heads of the agreement correctly, made the mistake complained of, in the copy; and that this was not perceived, until after the contract was executed. The answer is positive and direct, in contradicting this. The plaintiff, then, must make it out by satisfactory evidence, outweighing the answer. To increase the difficulty of the plaintiff’s task, there are some circumstances strongly corroborating the answer. The first of these is, that the bill itself shews, that there was never any claim made by Spangler, to more thán an undivided moiety of a tract supposed to contain 300 acres; and that he wished to sell only his part, never expressing any intention of selling any part of the portion which would fall to Key. Another, and a very important circumstance, as it seems to me, is, that the contract as stated by the bill, is so widely different from that expressed in the agreement executed, that it is difficult to conceive how the one could be mistaken for the other. Observe; the bill states, that Spangler sold the plaintiff 150 acres of land, with the improvements, at $ 17 1-3 per acre; .'the contract says, that he sold him his right, title, interest and claim, in and to the land, for $ 2600; The one a sale by the acre of a specified number of acres; the other, a sale in gross of his interest. M’Mahon does not say, that he did not read over the contract, that he was intoxicated, or in any other way deprived of the use of his reason, for the time. And can we easily imagine, how a man who had made an important *55 contract for 150 acres of land, at so much the acre, and had caused this contract to be reduced to writing, should read - it over, or have it read to him, and not discover that it was set down as a purchase in gross of an indefinite quantity of land ?
Let us see now what is the evidence to convict the scrivener of mistake. George Clack says, Spangler offered to sell to him his land, which he afterwards sold to the plaintiff, stating that his undivided moiety would be 1-50 acres; cannot be certain, but his impression is, that he offered the part with the improvements; has heard him make the same offer to others. Thomas Clack heard a conversation after the contract, between M’Mahon and Spangler, his recollection of which (after 2 years,) is, that Spangler did not positively admit, that Bush had made a mistake in drawing the contract; but said that if he had, it should be corrected. W. E. Clark was the plaintiff’s bar-keeper; heard many conversations, before the contract, between the parties; in one of which, Spangler said, there were 300 acres in the tract: that one half was his; and that he would warrant to the plaintiff 150 acres. After the survey, and the deficiency discovered, Spangler came to the plaintiff’s house, and told the affiant, that he would make satisfaction to the plaintiff. Mr. Williams says, that after the contract, Spangler asked him, in presence of the plaintiff, if he had not surveyed the land, and if it would not hold out 300 acres. He answered, he thought it would be thereabouts. He understood the defendant to say, he had sold the plaintiff 150 acres. Peter Roller. Spangler offered to sell him the land; said there were 300 acres, and he owned half, 150: that he could get either part, with or without the improvements. John Roller. The land was offered to him; rather thinks at 150 acres. He said the whole tract was 300 acres, and offered his part. This is all the evidence upon the subject of the mistake. I mean all, but those affidavits taken after the appeal; which, though if earlier taken, they would not change my opinion, I can *56 not think ought to be used to impeach a decree made before their existence. Now, I ask, does the-evidence prove that the contract made, and the contract signed and sealed, were different ? Not one of the witnesses pretends, that he heard the contract made. The conversations, at best, are loose and casual, related, after the lapse of two years, by persons not at all interested, in understanding or remembering them. Most of them may be explained, by adverting to the fact stated in the bill, that Key gave Spangler leave to sell either part; and if he sold the part unimproved, it would of course (on the supposition that the tract was 300 acres,) contain 150 at least. In all cases, he spoke of selling his part, his half, &c. In my opinion, if there were no other evidence in support of the contract but the answer and the circumstances, it would be unshaken by these affidavits.
But, there is'other and important evidence; the affidavit of Bush the scrivener. It was objected by the counsel for the appellant, that this ought not to be read, because it was not taken by the plaintiff. How does this appear? The affidavit bears on its face, to be regularly taken by the plaintiff, and is qualified to before a magistrate. It is in the record with the other evidence. No exception is taken to it, and we see that the Chancellor acted upon it; for he notices it in his opinion. There is, to be sure, appended to it, a note signed by Bush; but whether this be taken as evidence or not, (for it is not on oath,) I do not think it affects the affidavit. Without it, the evidence stands, like every other, unobjected to. With it, we see, that the affidavit was written at the request of M’Mahon, and that after hearing it read, he refused to have it taken at that time. But I hold, that a party cannot suppress evidence which he has had taken, because he finds that it makes against him. After the witness is examined, his evidence is in the hands of the commissioner of justice; it belongs to the cause, and ought not to be withheld. But I take it, no party can object to the reading an affidavit, in the Appellate *57 Court, which was read in the Court below, without objeetion. It was said, that there was no necessity for the plaintiff to except to this affidavit, because it was not taken by the defendant; but it was an affidavit filed in the cause, and which would of course be read, if not excepted to. The plaintiff, therefore, if he did not wish it read, ought to have excepted. If he had done so, the other party might, at once, have had it taken over again, or he might have shewn by other evidence, that it was in fact correctly taken.
I think, Upon these grounds, that the affidavit is good evidence; and it is most decisive to shew, that there was no mistake. He states, that he first made a rough draft of the contract, altering it to suit the views of the parties: that then he wrote it over fair, and read it to them distinctly more than once: that they seemed perfectly satisfied, and executed it. The point was against the plaintiff, without this evidence; but this puts it beyond all question. It is but justice to this witness to say, that the counsel, I think, mistook in saying thathe was contradicted, both by plaintiff and defendant, with respect to the written memorandum, from which he drew the agreement. They do not state, that they lodged with him a written memorandum to draw the contract by, but that Bush first drew the rough notes, under their direction, and then drew the contract from these; and'Nris/i states the same substantially, in his affidavit.
With respect to the last point, that the land turning out only 269, instead of 300 acres, there ought to be a deduction; even supposing there ought, it would not disturb this decree. The whole deficiency would be 31 acres; half of this, 151 acres. These, at $ 17 a per acre, would amount to $268 61; and there will be, after these $400, now in contest, are paid, $ 1100 of the purchase money still due. But, nothing is clearer than that this contract, as it is written, presents a purchase, not by the acre, but in gross. It is not now necessary to pronounce the law arising on this *58 aspect of the contract. There is abundance, without touchjng it, to say that the order dissolving the injunction is right.
The other Judges concurred, and the order of dissolution was affirmed.