PRESENT: All the Justices

WESTGATE AT WILLIAMSBURG CONDOMINIUM
ASSOCIATION, INC., ET AL.

                                              OPINION BY
v.  Record No. 050388                    JUSTICE G. STEVEN AGEE
                                            November 4, 2005
PHILIP RICHARDSON CO., INC., ET AL.


          FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
                        AND JAMES CITY COUNTY
                   Samuel T. Powell, III, Judge

     Westgate at Williamsburg Condominium Association, Inc.

("the Association") appeals from the judgment of the Circuit

Court of the City of Williamsburg and James City County which

held that the inclusion of a parcel of real estate within a

property description submitted pursuant to a recorded

Declaration of Condominium ("the Condominium Declaration") was a

scrivener's error subject to unilateral amendment by the

condominium declarant under Code § 55-79.71(F).  For the reasons

set forth below, we will reverse the judgment of the trial

court.

          I.   BACKGROUND AND MATERIAL PROCEEDINGS BELOW

     On August 19, 1997, Kotarides Builders/Developers, Inc.

("Kotarides, Inc.") entered into a contract to purchase an

11.913 acre parcel ("the property") from Philip Richardson Co.,

Inc. ("Richardson") in the City of Williamsburg ("the City").

The property was not subdivided, but consisted of two contiguous

tracts with different zoning classifications.  A nearly 11-acre

1

tract was zoned residential ("residential parcel"), and a .978 acre tract ("Parcel 1A") was zoned commercial. Kotarides, Inc. intended to develop a residential condominium development, Westgate at Williamsburg ("Westgate"), on the residential parcel.

The evidence at trial established that Richardson intended to keep Parcel 1A to facilitate a hotel it owned on adjoining property. However, neither Richardson nor Kotarides, Inc. wanted to delay the closing while a subdivision application was submitted and processed by the City to formally subdivide the property into the residential parcel and Parcel 1A. Therefore, Richardson intentionally conveyed the entire property to 752, LLC ("the LLC"),[1] the assignee of Kotarides, Inc., which was fully cognizant that the property acquired consisted of both the residential parcel and Parcel 1A.

Pete Alex Kotarides, project manager for the development, testified that Kotarides, Inc. and Richardson had always agreed that Parcel 1A "needed to end up back with . . . Richardson." To that end, the parties agreed that Kotarides, Inc. would lease

---

[1] Kotarides, Inc. formed 752, LLC solely for the purpose of purchasing the residential property and developing Westgate. 752, LLC was the successor in interest to Kotarides, Inc.'s interest in the property. Pete Alex Kotarides was the project manager in charge of Westgate for 752, LLC and designated by the LLC to act for it.

that parcel back to Richardson, and the purchase agreement gave Richardson a six-year option to reacquire Parcel 1A.[2]

Prior to closing, Kotarides, Inc. hired AES Consulting Engineers ("AES") to prepare site plans for the development of Westgate. The site plans described Parcel 1A as the "Lease Parcel," and showed no part of the condominium project actually being built on Parcel 1A.  After closing in March 1998, the LLC directed AES to prepare a metes and bounds property description and plat of the condominium property for purposes of the Condominium Declaration.  Although the site plans described Parcel 1A as a "Lease Parcel," AES included the entire property the LLC acquired from Richardson, Parcel 1A and the residential parcel, in both the metes and bounds description and the plat of the condominium property.

George T. Wilson, Jr., a land surveyor for AES, testified that the LLC never instructed AES to include or exclude Parcel 1A as part of the metes and bounds description or the plat.  He testified that the LLC asked AES to prepare a property description and plat for the property owned by the LLC.  AES

_____

[2] This arrangement allowed the parties to complete the sale without waiting for the property to be subdivided.  The parties later shortened the option to 30 days from the date of the sale, but Kotarides, Inc.'s successor in interest, 752, LLC, agreed to the sale in May 2002 even though that option period had expired.

3

sent the draft documents to Mr. Kotarides and Elizabeth L. White, the LLC's attorney, for review.

Mr. Kotarides testified that he reviewed the plat and concluded "that the lease parcel was not included."  He did not review the metes and bounds description.  Ms. White reviewed both drafts and suggested a number of changes, none of which questioned the accuracy of including Parcel 1A in the plat or metes and bounds description.  Mr. Kotarides admitted that he "didn't look at [the drafts] carefully enough."[3]

By Declaration of Condominium under Code § 55-79.54, dated May 28, 1999, and recorded June 3, 1999, the LLC created "a condominium regime by submitting the real estate in Exhibit A-1" attached to the Declaration to the applicable provisions of the Condominium Act, Code § 55-79.39, et seq.  Exhibit A-1 was the metes and bounds description of the property which included both the residential parcel and Parcel 1A.  Exhibit A-2, a plat of survey prepared by AES, was also attached to the Declaration which identified Exhibit A-2 as "showing the location and dimensions of the real estate comprising the Condominium . . . ."

---

[3] The LLC also used the AES plat and metes and bounds description to prepare a marketing brochure and a public offering statement, both of which indicated Parcel 1A was part of the condominium property.  Mr. Kotarides testified that he reviewed the brochure and the statement before they were printed and did not point out any mistakes.

The LLC also established the Association, and its members controlled the Association's Board of Directors. On June 14, 1999, the LLC sold the first unit of Westgate.

In January 2001, Richardson notified the LLC of its intent to repurchase Parcel 1A. Mr. Kotarides then learned that Parcel 1A had been included in the Westgate condominium property when he began to draw up the documents to complete the transfer of that parcel to Richardson. To facilitate the transfer to Richardson, the LLC recorded a Correction Amendment to the Condominium Declaration on March 16, 2001, which stated that "the legal description and the plat for Phase One erroneously included .978 acres of land that was never intended to be subjected to the Condominium." The Correction Amendment recited that "§ 55-79.71(F) of the Act allows the Declarant to unilaterally correct any scrivener's error in the condominium instrument" as the basis for the LLC's action. On May 1, 2002, the LLC conveyed Parcel 1A to Richardson and executed a reciprocal deed of easement and maintenance agreement between the LLC, the Association, and Richardson.[4] That afternoon, the LLC transferred control of the Association to the unit owners.

---

[4] The reciprocal deed obligated the Association to maintain the access road on Parcel 1A. Mr. Kotarides' father, Alex Pete Kotarides, signed it as Manager of the LLC and as the Vice President of the Association.

On November 20, 2002, the Association, representing the unit owners, filed a bill of complaint to quiet title against the LLC and Richardson, alleging the attempt to remove Parcel 1A from the condominium property by unilateral action in the Correction Amendment was unlawful. The Association asked the trial court to declare the Correction Amendment, the deed transferring Parcel 1A to Richardson, and the reciprocal deed of easement and maintenance agreement "null, void, and of no effect." The Association also requested attorneys' fees under Code § 55-79.53(A).[5] By final decree dated November 22, 2004, incorporating a letter opinion of August 11, 2004, the trial court entered judgment for the LLC and Richardson and awarded the LLC attorneys' fees of $51,264.71. In so doing the trial court agreed with the LLC and Richardson that a scrivener's error had occurred. The trial court made these findings in its letter opinion:

---

[5] Richardson filed an answer to the Association's bill of complaint and cross-bills against the LLC and Kotarides, Inc. The LLC filed a demurrer, answer and affirmative defenses to the Association's bill of complaint, a demurrer and answer to Richardson's cross-bill. Kotarides, Inc. demurred to Richardson's cross-bill. The trial court overruled both the LLC's demurrer to the Association's bill of complaint and the LLC's and Kotarides, Inc.'s demurrers to Richardson's cross-bill. Thereupon, Kotarides, Inc. filed an answer and affirmative defenses to Richardson's cross-bill. The trial court dismissed Richardson's cross-bills as moot upon entering the final judgment. The cross-bills are not the subject of this appeal.

The Court finds that Richardson sold a parcel of land to Kotarides, which consisted of 11.913 acres. The parcel contained two zoning designations, a .978 acre parcel was zoned B-2 and the balance zoned RM-2. That Richardson did not intend to convey the .978 acre parcel to Kotarides, but rather intended to use the .978 acre parcel for a parking lot for his planned expansion of his hotel, which is adjacent to the .978 acre parcel. Richardson did convey the entire parcel to Kotarides to expedite Kotarides' plan to develop condominiums on the property zoned RM-2. That Kotarides granted Richardson an option to purchase the .978-acre parcel back for a nominal amount. That Kotarides (now 752 LLC) had land development plans created for the condominium project, which included a description of the entire parcel purchased from Richardson, including the .978-acre parcel zoned B-2. That 752 LLC subjected the entire parcel to the condominium declaration. That the plat which describes the parcel to be subjected to the condominium project is detailed and difficult to follow. That 752 LLC did not intend to subject the .978-acre parcel to the condominium regime. The Court finds based upon the facts set forth that the .978 acre parcel was included in the condominium declaration by error.

The Court further finds that error of including the .978-acre parcel in the condominium description was contrary to the intent of 752 LLC. The error was not in the creation of the plat by the surveyor, but rather its[] use in the description of the property to be subjected to the condominium declaration. The error was in making the [Declaration] contrary to the intent of 752 LLC.

The Association makes four assignments of error to the judgment of the trial court. The Association contends the trial court erred in (1) finding that the inclusion of Parcel 1A in the Condominium Declaration property description and plat was a scrivener's error, (2) disregarding the property ownership interest of the unit

owners, (3) treating the Condominium Declaration as a deed and concluding that the association and unit owners were one and the same, and (4) awarding attorneys' fees to the LLC.

We agree with the Association that the trial court erred in holding that the inclusion of Parcel 1A in the Condominium Declaration property description was a scrivener's error under Code § 55-79.71(F).

## II.  ANALYSIS

### A. The Standard of Review

The LLC and Richardson assert that our standard of review in this case is that of "plain error."  "When the chancellor hears evidence ore tenus, his decree is entitled to the same weight as a jury verdict, and [the Court is] bound by the chancellor's findings of fact unless they are plainly wrong or without evidence to support them."  Hoffman Family, L.L.C. v. Mill Two Associates P'ship, 259 Va. 685, 696, 529 S.E.2d 318, 325 (2000).  They contend that whether a scrivener's error occurred is solely a question of fact, citing Marsteller v. Warden, 115 Va. 353, 79 S.E. 332 (1913).  In their view, the chancellor's findings of fact as to what occurred concerning Parcel 1A results in a finding of a scrivener's error as a conclusion only of fact.  We disagree.

While the trial court's findings of actual factual occurrences such as that Parcel 1A was included in the property description and plat contrary to the intent of the LLC and Richardson, is entitled to deference, the ultimate conclusion whether that mistake is a scrivener's error under Code § 55-79.71(F) is a question of law. We review questions of law de novo, including those situations where there is a mixed question of law and fact. See Barter Found., Inc. v. Widener, 267 Va. 80, 90, 592 S.E.2d 56, 61 (2004) (We review the trial court's "application of the law de novo, while giving deference to [its] factual findings."). Our decision in Marsteller did not establish a rule that the question of a scrivener's error is solely an issue of fact. That case dealt with the parol evidence rule and made only a passing reference to whether a scrivener had in fact omitted a provision from a contract by inadvertence. Marsteller, 115 Va. at 356, 79 S.E. at 333.

## B. Scrivener's Error

A condominium is created when a declarant records a condominium instrument. Code § 55-79.45. A declaration of condominium must include, among other things, a legal description by metes and bounds of the land submitted to the condominium regime and a plat showing the location and dimension

of submitted lands.  Code §§ 55-79.54(a), -79.58(A).  "If there is no unit owner other than the declarant, the declarant may unilaterally amend the condominium instruments," but if "there is any unit owner other than the declarant, the condominium instruments shall be amended only by agreement of unit owners" as set forth in Code § 55-79.71(A),(B).  The declarant may, however, "unilaterally execute and record a corrective amendment or supplement to the condominium instruments to correct . . . a scrivener's error," among other things.  Code § 55-79.71(F).

The LLC argues on appeal that the inclusion of Parcel 1A in the property description and plats incorporated in the condominium instruments was a scrivener's error and thus, it was entitled to amend the Condominium Declaration to correct that error.  The Association differentiates between a scrivener's error and other mistakes, contending that Code § 55-79.71(F), allowing declarants to unilaterally correct scriveners' errors, does not apply because the record reflects no cognizable scrivener's error.

The correction of a scrivener's error is a court-sanctioned action reforming a contract or other document.  We note, however, that a court's role in "correcting" documents is limited.  The rule is well-settled that a court is not permitted to rewrite a document or add terms not included by the parties.  See, e.g., Bentley Funding Group, L.L.C. v. SK&R Group, L.L.C.,

10

269 Va. 315, 330, 609 S.E.2d 49, 56 (2005) (court cannot alter the provisions of or add to the plain language of a contract); Jackson v. Fidelity & Deposit Co., 269 Va. 303, 310, 608 S.E.2d 901, 904 (2005) (court determines the intent of the testator from the plain language of the will and cannot add words to the will). A scrivener's error presents an exception to this general rule, because as the United States Court of Appeals for the Seventh Circuit has observed, scrivener's errors "are difficult to prevent, and . . . no useful social purpose is served by enforcing . . . mistaken term[s]." S.T.S. Transport Service, Inc. v. Volvo White Truck Corp., 766 F.2d 1089, 1093 (7th Cir. 1985). Thus, a change to a document because of a scrivener's error presents a significant exception to a well-established rule, so we must construe that term narrowly. See, e.g., Davis v. Mullins, 251 Va. 141, 149, 466 S.E.2d 90, 94 (1996) (A court's authority to correct a clerical error under Code § 8.01-428(B) should be narrowly construed and applied.).

Although we have not previously had occasion to examine what constitutes a scrivener's error under Code § 55-79.71(F), we have examined the term and related terms in other contexts. For example, "clerical mistakes" under Code § 8.01-428(B) may be scrivener's errors. Wellmore Coal Corp. v. Harman Mining Corp., 264 Va. 279, 283, 568 S.E.2d 671, 673 (2002).

In *Wellmore Coal*, we adopted the language of the Court of Appeals of Virginia, noting that scrivener's errors are those which are "demonstrably contradicted by all other documents." *Id*. (citing *Zhou v. Zhou*, 38 Va. App. 126, 133, 562 S.E.2d 336, 339 (2002)).  Examples of such errors include

> a typographical mistake made by a court reporter in transcribing a trial transcript, counsel's failure to prepare an order for entry by the trial court, and a misstatement on the record by the trial court regarding the length of incarceration a defendant was ordered to serve.

*Zhou*, 38 Va. App. at 133-34, 562 S.E.2d at 339 (citations omitted).

Our description of scriveners' errors in *Wellmore Coal* parallels that of the Illinois Court of Appeals, which defined such errors as those evidenced in the writing that can be proven without parol evidence. *Estate of Blakely v. Federal Kemper Life Assurance Co.*, 640 N.E.2d 961, 966 (Ill. Ct. App. 1994). Scrivener's errors tend to occur singularly; they are not "continuous, ongoing, and repeated." *Id*.  The scrivener's error in our recent decision in *State Farm Mutual Auto. Ins. Co. v. Remley*, 270 Va. 209, 221, 618 S.E.2d 316, 322 (2005), fits this description.  In *Remley*, we found that a default judgment against the defendant tortfeasor which listed him as both the plaintiff and the defendant was a scrivener's error as "[a] review of the default judgment order . . . compels the reader to

12

conclude" which of the parties was the plaintiff.  Id.  See also State v. Rosario, 680 A.2d 237, 239-41 (Conn. 1996) (date of events specified in search warrant affidavit were scrivener's errors where the date of the affiant's signature and a police case file number clearly indicated that the operative facts occurred in the current rather than a prior year); Dunton v. Tanigoshi, 190 P. 467 (Cal. Ct. App. 1920) (notice of hearing which listed the wrong weekday was sufficient because it contained the correct date).

In Morgan v. Russrand Triangle Assocs., Inc., 270 Va. 21, 26, 613 S.E.2d 589, 591 (2005), we reversed the trial court's judgment that its entry of a final order was a scrivener's error because it actually intended to grant a party's motion to reconsider instead.  We noted that

> [c]haracterizing the signing of the order by the trial judge, and by counsel for both parties, as an "oversight" or an "inadvertent error" is inconsistent with the affirmative acts of the trial court and counsel. Not only were all signatories aware that they were signing an order disposing of the merits of the case consistent with the trial court's previous opinion letter, all signatories are charged with the knowledge that an order is entered when signed by the trial judge.

Id.  Similarly, in Wellmore Coal, 264 Va. at 283, 568 S.E.2d at 673, we held that an attorney's failure to timely sign a document before submitting it to the Court did not

constitute a clerical error, which, in that context, was synonymous with a scrivener's error.

In M'Mahon v. Spangler, 25 Va. (4 Rand.) 51, 51-52 (1826), a buyer of real estate alleged he agreed to purchase a certain number of acres at a certain price, and that the contract which conveyed to him the seller's "right, title, interest and claim" in a tract of land in gross, without further specificity, was a scrivener's error. Relying on the contract drafter's testimony that "he first made a rough draft of the contract, altering it to suit the views of the parties: that then he wrote it over fair, and read it to them distinctly more than once: that they seemed perfectly satisfied, and executed it[,]" this Court held that despite the buyer's attested intention, there was no error by the scrivener in preparing the contract. Id. at 57.

The complaint in M'Mahon is very similar to that made here, and the resolution of that case is instructive. As in M'Mahon, a rough draft of the condominium transfer documents including the plat and metes and bounds description was made and tendered to the LLC, whose representative, Mr. Kotarides, and attorney, Ms. White, examined it. Suggestions for corrections were made by them to AES and adopted as changes before a final version was

14

submitted for review, executed and recorded.  None of those suggested changes involved removing Parcel 1A from the property submitted to the condominium regime for Westgate. The preparation, review, revision and adoption of the Westgate real estate documents were analogous to those in M'Mahon: the drafter "made a rough draft . . . , altering it to suit the views of the parties: . . . wrote it over fair, . . . that they seemed perfectly satisfied, and executed it."  25 Va. at 57.

In light of the forgoing, we cannot agree with the trial court's determination that a scrivener's error occurred in this case.  The alleged error was neither typographical nor clerical. There was no finding that AES, the scrivener, had transposed a call in the metes and bounds description, recited an erroneous deed book reference or similar error commonly recognized as a scrivener's error.  Instead, the trial court specifically found that there was no drafting error, but instead, based its judgment only on the LLC's intent that Parcel 1A should not have been included in the condominium property.

> The Court further finds that error of including the .978-acre parcel in the condominium description was contrary to the intent of 752 LLC.  The error was not in the creation of the plat by the surveyor, but rather its[] use in the description of the property to be subjected to the condominium declaration.  The error was in making the [Declaration] contrary to the intent of 752 LLC.

15

(Emphasis added).

The trial court's factual finding, to which we accord deference, is that the transaction failed to accurately express the intent of the LLC as declarant of the Condominium Declaration. However, that finding of a factual occurrence does not support a conclusion of law that the occurrence was a scrivener's error cognizable under Code § 55-79.71(F). The trial court found no error in AES' preparation of the real estate descriptions attached to the Condominium Declaration. "The error was not in the creation of the plat by the surveyor." Further, there was no finding that the scrivener was directed to exclude Parcel 1A, but nonetheless erroneously wrote it into the property description.

Like the real estate contract in M'Mahon, which was submitted, revised with the parties' changes, reviewed again and executed, the fact that a party's intent was not fully reflected cannot be attributed to an error of the scrivener. Instead, the error lies with the party's inattention to the detail before him. Mr. Kotarides, himself, admitted: "[He] didn't look at [the property description and plat] carefully enough."

The inclusion of Parcel 1A in the condominium was not an inadvertent, singular mistake, easily understood with

reference to the remainder of the Condominium Declaration. Rather, all the documents describing the property submitted to the condominium regime showed Parcel 1A as part of that property. Further, the mistake was borne out in successive documents. The marketing brochures and the public offering statement contained the same information, went through the same review process and were also approved by Mr. Kotarides.

The error in this case was not that of the scrivener's transcription of the real estate description, but in the review process of the parties. Construing the term narrowly, as we must, we find there was no error by the scrivener, AES, in the transcription of the document. Accordingly, there was no scrivener's error under Code § 55-79.71(F), which permitted the LLC to record the Correction Amendment. The trial court thus erred in concluding otherwise and awarding judgment for the LLC and Richardson.

### C. Attorneys' Fees

Failure to comply with the Condominium Act entitles a prevailing party to attorneys' fees under Code § 55-79.53(A) which the trial court awarded against the Association. However, since the trial court erred in granting judgment to the LLC and Richardson, those parties

17

are not prevailing parties entitled to the statutory award. The Association, not the LLC or Richardson, is the prevailing party "entitled to recover reasonable attorneys' fees and costs expended in the matter" under Code § 55-79.53(A).  See, e.g., Chase v. DaimlerChrysler Corp., 266 Va. 544, 548-49, 587 S.E.2d 521, 523 (2003) (equating "prevailing party" with "successful party").  Accordingly, the trial court's award of attorneys' fees against the Association cannot stand.

IV. CONCLUSION

The inclusion of Parcel 1A in the property description and plat of the Condominium Declaration was not a scrivener's error. Therefore, the LLC was not entitled to remove that parcel from the condominium unilaterally by the Correction Amendment under Code § 55-79.71(F).  Further, because the trial court erred in granting judgment to the LLC and Richardson, those parties are not entitled to attorneys' fees under Code § 55-79.53(A).[6]  We will therefore reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

---

[6] As we reverse the trial court's judgment under the first assignment of error, we do not address the Association's second and third assignments of error.

18