THACKER, Circuit Judge, concurring in part and dissenting in part: I agree with the majority that the bankruptcy court did not clearly err in finding that Ricardo Cantu, Jr, (the “Debtor”) acted in good faith throughout his bankruptcy proceedings. However, I disagree with two other aspects of the opinion. First, I believe Thomas Gorman (the “Trustee”) sufficiently raised the legal statutory interpretation issue of whether debtors can exclude post-petition retirement contributions from disposable income. And, in my view, and we should address that issue. Second, I believe the bankruptcy court clearly erred in finding a “scrivener’s error” and interpreting the divorce decree executed by Debtor and his wife (the- “Divorce Decree”) as requiring $1,625 in monthly support payments, when on its face the Divorce Decree unambiguously requires $1,500. As explained below, I would vacate the portion of the district court’s decision affirming that finding, and remand for further proceedings. I. I disagree with the majority’s statement that the Trustee’s challenge is limited to two factual good faith arguments, and that we need not "resolve th[e] statutory issue.” Ante at 203-04. In my view, the bankruptcy court thoroughly analyzed the Johnson/Seafort/Prigge statutory interpretation issue, and the Trustee properly raised it on appeal. Therefore, we should review the issue de novo. The Trustee clearly set forth in the Argument section of its opening brief the issues of whether additional income “known to become available upon repayment of a retirement loan” is considered “projected disposable income” under 11 U.S.C. § 1325(a)(1)(B), and whether 11 U.S.C. § 541(b)(7) “entitles a debtor to divert” income that becomes available after a retirement loan is repaid or whether it should be used to repay unsecured creditors. Appellant’s Br. 25-47. The Trustee presented a thorough argument that the bankruptcy court incorrectly adopted the In re Johnson view, which allows debtors to exclude post-petition retirement contributions from disposable income. See Appellant’s Br. 34-47; Ante at 202-03; see also Fed. R. App. P. 28(a)(8) (In the argument section of the opening brief, the appellant must provide its “contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.”). The majority cites to oral argument and the Trustee’s reply brief to conclude that the Trustee “does not seek reversal on the ground that the majority approach adopted by the bankruptcy court is incorrect, or urge us to adopt some other identified standard.” Ante at 203. Rather, the majority concludes, “the Trustee argues ... that a showing of good faith is a minimum requirement for exclusion of post-petition retirement contributions, and ,.. the bankruptcy court erred in its good faith interpretation.” Id. (citing Appellant’s Reply Br. 1-4). To the contrary, at oral argument, after the court peppered counsel with questions about the confines of his argument, the Trustee took pains on rebuttal to refute the notion set forth by the majority. See Oral Arg. at 39:10-39:21, Gorman v. Cantu, No. 17-1034 (4th Cir. Oct. 25, 2017), http://www.ca4.uscourts.gov/ oral-argument/listen-to-oral-arguments (“I want to clarify .... I. don’t see this as exclusively] ... a good faith analysis. That’s part of it.”). Moreover, the reply brief, while focusing on good faith, comes far from conceding or waiving the statutory argument. Indeed, the reply brief states, “The actual issue before this Court with regards to the retirement account is whether Congress intended, to allow debtors in bankruptcy the opportunity to enhance ... existing retirement savings at the direct expense of those creditors whose claims are not being paid in full and will be discharged at the end of the case.” Appellant’s Reply Br. 1 (emphasis supplied). Therefore, not only was the issue squarely presented, but it is also an important issue that has only been addressed by one other circuit half a decade ago. See Seafort v. Burden (In re Seafort), 669 F.3d 662 (6th Cir. 2012). I regret that we will miss a chance to weigh in on an important statutory interpretation issue, which likely affects thousands of retirees and current and potential debtors in the Fourth Circuit. See Appellee’s Br. 41; see also Tara Twomey & Todd F. Maynes, Protecting Nest Eggs and Other Retirement Benefits in Bankruptcy, 90 Am. Bankr. L.J. 235, 241 (2016). II. Next, I would vacate the portion of the district court’s judgment adopting the bankruptcy court’s factual finding that Debtor’s monthly support payments were actually $1,625. See ante at 204-05. Chapter 13 of the bankruptcy code allows for a deduction from disposable income for “[c]ourt-ordered payments,” which is defined as “[t]he total monthly amount [paid] as required by the order of a court or administrative agency, such as spousal or child support payments.” Line 19, Official Form 122C-2, Calculation of Your Disposable Income, http://www.uscourts.gov/sites/ default/files/form_bl22c-2.pdf (April 2016) (saved as PDF opinion attachment) (emphasis supplied); see 11 U.S.C. § 1325(b)(2). In support of the Debtor’s claimed $1,625 deduction, he submitted a separation agreement (“Separation Agreement”) dated June 5, 2015, wherein he and his wife agreed that he would contribute $550 for alimony and $200 for child support from each biweekly paycheck. Because he received 26 paychecks per year, he claims the amount should have resulted in $1,625 per month ($750 x 26 / 12 = $1,625). The Divorce Decree, however, reflected a $1,500 monthly payment. Crucially, the Divorce Decree is the only relevant court order in this record, it was executed after the Separation Agreement, and it did not incorporate the Separation Agreement. Rather, the Divorce Decree incorporated a separate “Marital Settlement Agreement” executed on July 24, 2015, which is not in the appendix here, nor was it presented,to the bankruptcy or district courts. J.A. 203. The majority posits that it is a bankruptcy court’s obligation to interpret contractual intent, and I agree that contract interpretation is part of the bankruptcy court’s “core proceeding” jurisdiction. See 28 U.S.C. § 157(b)(2)(L) (“Bankruptcy judges may hear and determine ... all [Title 11] core proceedings,” which include “confirmations of plans”); Tilley v. Jessee, 789 F.2d 1074, 1077 (4th Cir. 1986) (conducting an “examination of a written agreement as persuasive evidence of intent” as to whether debts were in the “nature of’ alimony, maintenance, or support in Chapter 11 proceeding); In re Lowenschuss, 170 F.3d 923, 930 (9th Cir. 1999) (interpreting divorce decree to determine “divorce court’s intent”). I am bewildered as to how the bankruptcy court, without the benefit of the July 24, 2015 agreement, could have found a “scrivener’s error.” J.A. 179. When bankruptcy courts interpret contracts, they are charged with applying the appropriate state law. See In re Merritt Dredging Co., Inc., 839 F.2d 203, 205 (4th Cir. 1988) (“The determination of property rights in the assets of a bankrupt’s estate is generally a matter of state law.”). Under Virginia law, “Scrivener’s errors are those which are demonstrably contradicted by all other documents.” Westgate at Williamsburg Condo. Ass’n v. Philip Richardson Co., 270 Va. 566, 621 S.E.2d 114, 119 (2005) (internal quotation marks omitted). The only court order before the bankruptcy court was the Divorce Decree, which unambiguously stated that Debtor’s support payment was $1,500 per month. Crucially, the June 5 document, upon which the bankruptcy court relied to support the purported “scrivener’s error,” was an earlier contract not incorporated into the Divorce Decree, and the July 24 document is nowhere to be found. How, then, can the bankruptcy court have considered “all other documents”? And how could it have determined that a document not in the record “demonstrably contradicts]” the only court order before it? Instead, the bankruptcy court relied on the oral testimony of the Debtor himself and explained, “[I]t is highly unlikely ... that the payee spouse would go to court to complain that she was receiving more than is reflected in the divorce decree, and it is equally unlikely that the payor spouse would be held in contempt for paying more than what the divorce decree requires.” Id. at 179-80. But this type of soothsaying has no support in the face of the plain language of the contract. See Bentley Funding Grp., L.L.C. v. SK & R Grp., L.L.C., 269 Va. 315, 609 S.E.2d 49, 56 (2005) (“It is the function of the court to construe the contract made by the parties, not to alter, the contract they have made so as to conform it to the court’s notion of the contract they should have made in view of the subject matter and the surrounding facts and circumstances.” (alteration and internal quotation marks omitted)). Moreover, under Virginia law, “judgments and decrees are contracts of the highest order and especially is this so when entered by consent of the parties.” Higgins v. McFarland, 196 Va. 889, 86 S.E.2d 168, 172 (1955). The Divorce Decree, which states that Debtor would pay “$1,110 per month” in child support and “$400 per month” for spousal maintenance, was signed by both Debtor and his ex-wife. J.A. 203, 205, 207. For these reasons, I would vacate the portion of the bankruptcy’s decision regarding the support payments and remand for further proceedings. I cannot join the majority’s affirmance of the finding that the Divorce Decree contains a scrivener’s error when that finding was based on speculation and an unincorporated document that is not a court order.