UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, Malveaux and Fulton
Argued by videoconference


TWENTY-THIRD STREET CORRIDOR, LLC

MEMORANDUM OPINION[*] BY
v.        Record No. 1305-22-4          JUDGE MARY BENNETT MALVEAUX
AUGUST 8, 2023

TAJ CORPORATION, ET AL.


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel S. Fiore, II, Judge

Mark P. Friedlander, Jr. (Friedlander & Friedlander, PC, on briefs),
for appellant.

Patrick J. McDonald (Cameron/McEvoy, PLLC, on brief), for
appellees.


Twenty-Third Street Corridor, LLC ("Twenty-Third Street") appeals from an order of the

circuit court dismissing its counterclaim against Taj Corporation and Shahjahan Mia

(collectively, "Mia").  Twenty-Third Street argues that the court erred in finding that the parties

agreed to amend their lease as represented by Mia and that Twenty-Third Street failed to carry its

burden of proving Mia owed unpaid rent.  For the following reasons, we affirm.

I.  BACKGROUND

"When reviewing a circuit court's decision on appeal, we view the evidence in the light

most favorable to the party who prevailed below . . . and grant them the benefit of any reasonable

inferences" that flow from the evidence.  *Lively v. Smith*, 72 Va. App. 429, 432 (2020).

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

Twenty-Third Street and Mia[1] entered into a written deed of lease for an Arlington County commercial property on June 17, 2013. Mia operated a restaurant in the leased premises. The lease contained no express provision concerning modification of its terms.

Following a dispute about rent, Twenty-Third Street evicted Mia in July 2021. Mia filed a complaint, and, later, an amended complaint, alleging breach of contract and wrongful eviction and interference with contract and business expectancy. Mia also sought damages from Twenty-Third Street. Twenty-Third Street filed an answer and counterclaim, later amended, asserting that Mia had breached the lease by failing to pay rent. The company further alleged that Mia owed $72,878 in unpaid rent and late fees.

A. Mia's Evidence at Trial

Mia testified that prior to the COVID-19 pandemic, he did a "very reasonable business." He was in regular contact with Twenty-Third Street's representative, Stratis Voutsas ("Voutsas"), and the relationship between the two men was "good." Mia and Voutsas frequently talked by phone or in meetings at the restaurant.

In March 2020, Mia called Voutsas about his rent and told him it was "very hard to keep open the restaurant" because of the pandemic. Voutsas told Mia he would "take care of your rent" by "giv[ing] you three months at least. Then I will work with you the rest of COVID getting back to the actual rent." Voutsas later testified that in June 2020, Twenty-Third Street provided its tenants with a "COVID-19 Rent Abatement Letter" informing them that the company would completely abate rents for the month of April 2020. However, Mia testified that he never received the letter. Instead, when asked whether his April 2020 rent had been abated, Mia reiterated that when he had problems keeping the restaurant open in 2020, Voutsas told him, "I will take care of that." Mia stated that Voutsas ultimately "g[a]ve April, May, June, three

---

[1] Mia testified that he was the owner of Taj Corporation.

- 2 -

months, free rent. That's the reason I kept the restaurant open." However, Mia later fell behind in the rent, beginning in December 2020 and continuing through March 2021.

On March 17, 2021, Mia and Voutsas met at the restaurant to discuss rent. Mia testified Voutsas told him that if he paid $16,000, Voutsas would "clean up everything." Mia would then pay rent of $4,000 per month for April and May 2021, after which, Voutsas said, "you have to come to full rent." Mia understood this to mean that $16,000 would pay off his rent arrears and that going forward, his balance owed would be "[z]ero."

Alford Sibil, a server in Mia's restaurant, testified that he was present during the meeting. The restaurant was closed at that hour, and Sibil was sitting on a couch "very close" to where Voutsas and Mia were sitting. Sibil heard the men discussing rent, and stated that Voutsas told Mia, "if you pay me [$]16,000" there would be "a zero balance." Mia asked Sibil to bring a soda for Voutsas, and when Sibil returned, Mia was writing a check that he then gave to Voutsas. Sibil stated that he heard the conversation between Mia and Voutsas "very clearly" and denied that the two men argued. He also denied hearing any demand by Voutsas that Mia make a $20,000 payment toward rent or any discussion that Mia owed $40,000 in rent.

Mia introduced into evidence Exhibit 11, a photocopy of a $16,000 check drawn on an account of Taj Corporation. Signed by Mia and dated March 18, 2021, the check indicated in its subject line that it was for "rent payment Dec rent 20/Jan Feb March 2021." Below the check's image on the photocopy appeared a handwritten notation stating, "3/17/2021 Received [r]eduction [t]owards [r]ent," followed by a signature. Immediately below was another notation stating, "[a]greed to pay 4000 in April and May as reduction in rent," followed by the same signature. Voutsas acknowledged that it was his signature that appeared below each of the handwritten notations and that he signed the photocopy at the March 17, 2021 meeting.

In addition to the $16,000, Mia testified that he paid Twenty-Third Street $4,000 rent in both April and May 2021 and that he resumed payment of full rent in June 2021. He also introduced into evidence a copy of his check for full rent for July 2021.

Sometime after the meeting, Twenty-Third Street provided Mia with a document, entitled "Customer Balance Detail," that indicated that as of March 18, 2021, Mia's rent was in arrears in the amount of $27,567.83. Then, in July 2021, Voutsas delivered a "5-Day Notice to Cure" letter to the restaurant. The letter stated that Mia was in arrears on rent and that through July 9, 2021, he owed $72,878 in rent and fees. Attached to the letter was a fifteen-page "Tenant Statement" detailing Mia's rent payments from 2013 through July 2021. The statement reflected that Mia's check in the amount of $16,000 had been credited on March 18, 2021. It further reflected that in both April and May 2021, Mia made rent payments of $4,000 and that he had resumed paying full rent in June 2021. However, the statement also included a June 2021 notation indicating that Mia owed $20,673.21 for a "Probation Credit Reversal for not bringing account current on May 31, 2021 per notice." Mia testified that he was never notified that any rent credits he had received were "probationary." He also stated that prior to receiving the cure letter, he had never received any notice of default.

After receiving the letter, Mia called Voutsas and asked him why he was being asked to pay over $72,000 when "you told me if I pay [$]16,000 we are even." He also challenged the $72,878 figure, noting that the "Customer Balance Detail" had only represented arrears amounting to about $27,500. Mia stated that while questioning Voutsas' figures, he wrote "balance here" next to the $27,567.83 "Total Due" on the "Customer Balance Detail." Mia said that in response to his questions, Voutsas assured him that "I will fix it up. . . . So you will continue to pay what I say, just listen to that." He also told Mia that with respect to the $27,567.83, "you don't owe it."

Regardless, Voutsas changed the locks on the restaurant during the night of July 21, 2021. Mia denied that he owed any amount of money to Twenty-Third Street as of July 14, 2021, the date of the notice to cure letter.

B. Twenty-Third Street's Evidence at Trial

Voutsas testified that he was Twenty-Third Street's co-manager and that during the meeting on March 17, 2021, he told Mia he owed $43,000 and "need[ed] . . . to pay some of this." He then asked Mia, "[c]an you give me at least $20,000." Voutsas acknowledged receiving Mia's check for $16,000 and said he told Mia that the check would be credited "towards his rent balance."

Voutsas introduced into evidence Exhibit D, his own photocopy of Mia's check, which included a different handwritten notation than those on Exhibit 11. The notation was unsigned and stated that "Mia paid towards rent will pay 4000 in April May and then pay balance." Exhibit D also included a photocopy of the check's reverse side, which displayed the initials "MV" and a handwritten notation indicating that the check had been "received with reservation of rights." Voutsas insisted that he "never discounted [the] rent," that after paying $16,000 Mia "had to pay the balance," and that he discussed this with Mia "very clearly." Voutsas also introduced into evidence copies of Mia's bank records, which reflected that in both April and May, 2021, Mia paid Twenty-Third Street $4,000 and that in June 2021 he paid the company full rent.

During cross-examination, Voutsas denied that he and Mia had engaged in informal modifications of the lease over time. Voutsas described sending Twenty-Third Street's tenants a COVID-19 "Rent Abatement Letter" in June 2020 and stated that he "gave everybody a one-month discount in April [2020], and two-thirds of the rent for . . . July, August, and September [2020]." When asked about Mia's testimony that during their March 17, 2021

meeting the two men "had a conversation and agreed to a rent payment," Voutsas responded that he "had no such conversation" and that Mia's testimony was "all false" and he had "sat there and lied."

Counsel for Mia also asked Voutsas about the two different photocopies of Mia's check and the different handwritten notations. Voutsas acknowledged that he had signed Mia's version, Exhibit 11, during the meeting and that the notation on his own copy, Exhibit D, indicating Mia would later "pay balance," had been written "the day of the meeting" but after it. He specifically denied agreeing that Mia could pay $16,000 in rent arrears and then have a balance of zero going forward, while acknowledging that Mia had paid $4,000 per month in rent in both April and May 2021 before resuming payment of full rent in June 2021. Voutsas also acknowledged that he had never sent Mia a written request for late rent, late fees, or administrative fees, or a written notice of default between the time the lease started in 2013 and the July 14, 2021 cure letter.

Voutsas' daughter, Mary Voutsas ("Mary"), testified that she was Twenty-Third Street's bookkeeper and that she maintained the records regarding the collection of rent. Mary stated that she participated by telephone in the meeting on March 17, 2021, but that she sometimes had a hard time hearing "exactly everything" that was said. Her recollection was that Mia and Voutsas differed about the amount of rent due and "seemed to not be listening to each other." Mary stated that she had prepared the "Customer Balance Detail" later provided to Mia and that the $27,567.83 figure represented "what was due as of March 18, 2021, with [Mia] having given the $16,000 check." She specifically denied that Voutsas ever stated that if Mia paid $16,000, he would owe no more in back rent. However, she could not recall the "exact number[]" Voutsas told Mia was the amount of back rent he would have to pay.

Georgia Papadopolous ("Papadopolous") testified that she was a co-manager of Twenty-Third Street and that she also participated by telephone in the meeting on March 17, 2021. She stated that there were arguments during the meeting and that the amount of money being discussed was "considerable. . . . something like 40, maybe." However, "[t]he number that they arrived at, I was so frustrated I think I tuned out at that point." Ultimately, Papadopolous understood that Mia "was going to pay something towards what [he] owed," but not that "[i]f you pay this amount, you don't owe anymore." She did not know how the meeting ended because she had "hung up" "out of frustration," although Voutsas "called back and said, we have agreed to [$]16,000." Papadopolous specifically denied that the parties had agreed to waive all rent arrears, but acknowledged during cross-examination that she missed parts of the conversation that took place after she hung up.

## C. Subsequent Events

The court made no rulings from the bench and entered its written final order on July 25, 2022. The court found that the parties had agreed to amend the rent as shown in Exhibit 11 and that Twenty-Third Street had failed to meet its burden of proving any further rents due and owing. The court noted that it had considered the witnesses' testimony and determined the credibility and weight to be afforded their testimony and that it had "also considered exhibits and determined the weight afforded to each, along with the remaining portion of the record." The court dismissed both Mia's complaint and Twenty-Third Street's counterclaim.

On August 2, 2022, Twenty-Third Street filed a motion for reconsideration. It argued that the circuit court erred in holding that Exhibit 11 was an amendment to the lease that cancelled all prior rent debt in exchange for $16,000, because the explicit terms of the document only stated that the $16,000 was for "Rent payment, Dec rent 20/Jan Feb Mar 2021." Since "[a]s an amendment, the document must be read as written," Mia's $16,000 check "could, at best,

have been a modification of the unpaid rent for the named four months." Twenty-Third Street also argued that even if it had agreed to accept $16,000 as payment in full for Mia's rent obligation, that agreement would have been made "in response to a material misrepresentation by [Mia] that his restaurant was struggling, and that he had no money." Twenty-Third Street alleged that Mia had received substantial COVID-19 relief funds from the government and then "created a false illusion of a struggling business" and that it had "rel[ied] on the falsehood" in "g[iving] Mr. Mia breaks and latitude to keep him operating."

Also on August 2, 2022, Twenty-Third Street filed a motion requesting a suspending order to allow the court to retain jurisdiction for a "possible hearing" on the motion for reconsideration. The record contains neither a suspending order entered by the court, nor a request for a hearing on the motion for reconsideration or a ruling on that motion.

This appeal followed.

## II. ANALYSIS

### A. Amendment of the Lease

Twenty-Third Street argues the circuit court erred in finding that Exhibit 11 was an "amendment to the [l]ease that satisfied all prior rent in arrears." Specifically, it contends that Voutsas denied he had ever agreed to cancel all prior rent obligations in exchange for $16,000 and that both Mary and Papadopolous confirmed that no such agreement had been reached. Although it acknowledges that the court was entitled to believe Mia and Sibil and not believe its witnesses, it argues the court could not "ignore" the "written contradictions" of the "Customer Balance Detail" which demonstrated that after paying $16,000, Mia still owed $27,567.83 in rent arrears, "which [he] acknowledged by writing 'BALANCE HERE.'" Twenty-Third Street further asserts that the court did not have the right to "disregard[]" the notation on the back of the check in Exhibit D, indicating that it had been "[r]eceived with reservation of rights."

- 8 -

"The interpretation of a contract presents a question of law subject to *de novo* review." *Reston Surgery Ctr. v. City of Alexandria*, 62 Va. App. 549, 559 (2013) (quoting *Orthopaedic and Spine Ctr. v. Muller Martini Mfg. Corp.*, 61 Va. App. 482, 490 (2013)).  Such review extends to "those situations where there is a mixed question of law and fact."  *PMA Cap. Ins. Co. v. US Airways, Inc.*, 271 Va. 352, 358 (2006) (quoting *Westgate at Williamsburg Condo. Ass'n, Inc. v. Philip Richardson Co., Inc.*, 270 Va. 566, 574 (2005)).  "Where there are mixed questions . . . , 'we give deference to the [circuit] court's factual findings and view the facts in the light most favorable to the prevailing party, but we review the [circuit] court's application of the law to those facts de novo.'"  *Davis v. Davis*, 298 Va. 157, 167 (2019) (quoting *Tuttle v. Webb*, 284 Va. 319, 324 (2012)).  "[F]actual findings will not be disturbed on appeal unless they are plainly wrong or without evidence to support them," *Collins v. First Union Nat'l Bank*, 272 Va. 744, 749 (2006), and we are cognizant that "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented," *Budnick v. Budnick*, 42 Va. App. 823, 834 (2004) (quoting *Sandoval v. Commonwealth*, 20 Va. App. 133, 138 (1995)).

"Contracting parties may, of course, modify the terms of their contract by express mutual agreement." *Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68, 72 (1983).  "[M]odification of a contract must be shown by 'clear, unequivocal and convincing evidence, direct or implied.'" *Reid v. Boyle*, 259 Va. 356, 370 (2000) (quoting *Stanley's Cafeteria, Inc.*, 226 Va. at 73).  "[T]he burden of persuasion at trial in the circuit court . . . [rests] on the tenants to prove modification . . . as 'the party asserting' it, not on the landlord."  *Robert and Bertha Robinson Fam., LLC v. Allen*, 295 Va. 130, 140 (2018) (quoting *Stanley's Cafeteria, Inc.*, 226 Va. at 73).

Here, it is undisputed that the parties mutually intended to modify the terms of Mia's rent under the lease.[2] However, they dispute the precise terms of the modification, with Twenty-Third Street maintaining that the parties' intent respecting modification was reflected in Exhibit D, while Mia argues that the parties' intent was reflected in Exhibit 11. We reject Twenty-Third Street's argument and hold that clear, unequivocal, and convincing evidence supports that the mutual intent of the parties was reflected by the terms contained in Exhibit 11, as argued by Mia.

First, the witnesses' testimony supports Mia's interpretation of the document contained in Exhibit 11. Here, the parties' argument turns on whether the terms "[r]eduction [t]owards [r]ent" and "reduction in rent" signified, as maintained by Mia, that after Mia paid $16,000, two future installments of rent at $4,000, and then resumed payment of full rent, he would owe no more in rent arrears—or whether, as maintained by Twenty-Third Street, those payments were only temporary reductions in rent and Mia was still required to pay the balance of any arrears. Mia testified to his understanding that if he paid $16,000 in arrears, plus the next two months of rent at a reduced rate of $4,000 per month, and then resumed paying rent at the regular rate, Voutsas would "clean up everything" and Mia would have a "[z]ero" balance going forward. Sibil, who was also present at the meeting, testified that Voutsas told Mia "if you pay me [$]16,000," there would be "a zero balance." Further, Sibil denied hearing any discussion that Mia owed $40,000 in rent or any demand by Voutsas that Mia make a $20,000 payment toward rent. Voutsas contradicted this testimony and alleged that Mia's testimony was "all false." Mary and Papadopolous, who stated that they listened to the meeting on the telephone, broadly

---

[2] We note that neither party raised any arguments or objections in the circuit court, or arguments on appeal, relating to the statute of frauds, the court's consideration of parol evidence, or even whether there was a modification of the lease. Rather, the parties confined themselves to contesting what modification they had agreed to and how that modification had been obtained.

corroborated Voutsas' account of the meeting. But Mary acknowledged that at times she was unable to hear "exactly everything" that was being said, and Papadopolous acknowledged that she "tuned out" at one point and missed hearing parts of the conversation after she hung up the phone. The circuit court clearly credited the testimony of Mia and Sibil over the testimony of Twenty-Third Street's witnesses, and we will not interfere with that credibility determination.

Second, the evidence of the parties' conduct supports Mia's interpretation of the modification. Voutsas acknowledged that Mia paid $4,000 in rent in both April and May 2021 and that he did not send Mia any notice of default or written request for late rent prior to July 2021. Thus, Voutsas' own actions demonstrate that the parties engaged in a post-meeting course of performance that supports Mia's interpretation of the document contained in Exhibit 11. *See Reid*, 259 Va. at 370 (noting that contracting parties may evince their modification of a contract "by their course of dealing," so long as the modification is demonstrated by clear, unequivocal, and convincing evidence).

Third, although Twenty-Third Street asserts that the court "ignore[d]" the "written contradictions" contained in the "Customer Balance Detail," the court did no such thing, as its written final order made clear that it "considered [the] exhibits and determined the weight afforded to each." It is well established that a court "speaks through its written orders" and that "[w]e presume that the written orders accurately reflect what transpired." *Petrosinelli v. People for Ethical Treatment of Animals, Inc.*, 273 Va. 700, 709 (2007). Additionally, Mia provided credible testimony that in writing "balance here" next to a figure of $27,563.83, he was not acknowledging he owed that amount in rent arrears; rather, he made that notation while questioning Voutsas why he was being asked to pay additional sums after Voutsas had previously told him if he paid $16,000, "we are even." Further, Twenty-Third Street's own

evidence that $27,563.83 was owed in rent arrears was contradicted by its additional evidence, in the "Tenant Statement," indicating that Mia owed substantially more in rent arrears and fees.

Lastly, we conclude that the court did not err in determining not to credit the notation about "reservation of rights" written on the back of Mia's check and depicted in Exhibit D. Voutsas acknowledged on cross-examination that he signed the document contained in Exhibit 11 during the meeting with Mia, while the document contained in Exhibit D was prepared "the day of the meeting" but after the meeting. The notation indicating Twenty-Third Street's "reservation of rights" also appears beneath the initials "MV," and a reasonable inference supports that these are the initials of Mary Voutsas, who was not physically present for the meeting about rent and therefore could not have made the notation at the time the parties agreed to modify rent. Thus, the document contained in Exhibit 11, and not the document contained in Exhibit D, was contemporaneous with the parties' agreement at the meeting. Accordingly, Twenty-Third Street's contention that the circuit court should have relied upon the document contained in Exhibit D, rather than the document contained in Exhibit 11, is without merit.

Considering the evidence in its totality, we conclude the document contained in Exhibit 11 reflected the parties' agreement to modify rent as argued by Mia. Consequently, we find no error by the circuit court in ruling that the parties agreed to amend rent as shown in Exhibit 11.[3]

---

[3] Twenty-Third Street advances two other arguments with respect to this assignment of error. First, it contends that the court erred in declaring that Exhibit 11 "provid[ed] accord and satisfaction rental relief." However, as Twenty-Third Street correctly acknowledges on brief, "[t]he [c]ourt . . . did not rule an accord and satisfaction, but rather made a finding of a lease amendment." Consequently, as the court made no ruling on the issue of accord and satisfaction, there is nothing for us to review with respect to this argument. *See* Rule 5A:18; *Da'mes v. Da'mes*, 74 Va. App. 138, 151 (2022) (holding that where there was no ruling on a matter in the circuit court, Rule 5A:18 precludes this Court from considering the matter on appeal). Additionally, we note that accord and satisfaction is an affirmative defense and that it was not raised by Mia in response to Twenty-Third Street's counterclaim. *See Cal. Condo. Ass'n v. Peterson*, 301 Va. 14, 20 (2022).

Second, Twenty-Third Street argues that even if Exhibit 11 constituted a written amendment of the lease with respect to rent, it "must be read as written"; accordingly, "the

B. Fraud and Misrepresentation

Twenty-Third Street also argues that the circuit court erred in finding that Exhibit 11 constituted an enforceable amendment to the lease because the amendment was "procured by fraud and misrepresentation." In closing argument, Twenty-Third Street suggested that Mia engaged in fraud or misrepresentation regarding the COVID-19 relief funds available to him, which it alleged he could have used to pay rent. However, Twenty-Third Street never specifically pled fraud to the circuit court prior to trial—either in its answer and counterclaim to Mia's original complaint or its amended answer and counterclaim. "[T]he rule is well established that fraud must be clearly alleged in order that evidence intended to prove fraud may be introduced," because "[e]very litigant is entitled to be told by his adversary in plain and explicit language what is his ground of complaint or defense." *Brooks v. Bankson*, 248 Va. 197, 206 (1994) (quoting *Chesapeake & Ohio Ry. Co. v. Osborne*, 154 Va. 477, 506 (1930)); *see also Ciarochi v. Ciarochi*, 194 Va. 313, 315 (1952) ("Where fraud is relied on, the bill must show specifically in what the fraud consists, so that the [opposing party] may have the opportunity of shaping his defence accordingly, and since it must be clearly proved it must be distinctly stated." (quoting *Alsop v. Catlett*, 97 Va. 364, 370 (1899))). Twenty-Third Street did specifically allege fraud and misrepresentation in its motion for reconsideration, but the record, as noted above, contains no indication that Twenty-Third Street either requested or received a ruling on its motion. Accordingly, Twenty-Third Street's motion for reconsideration did not preserve this argument for appellate review. *See Westlake Legal Grp. v. Flynn*, 293 Va. 344, 352 (2017)

---

$16,000 payment could, at best, have been a modification of the unpaid rent for the named four months" of December 2020 and January through March 2021. Although Twenty-Third Street presented this argument to the court in its motion for reconsideration, the record, as noted above, contains no indication that Twenty-Third Street either requested or received a ruling on its motion. Accordingly, Twenty-Third Street did not preserve this argument for appellate review. *See Westlake Legal Grp. v. Flynn*, 293 Va. 344, 352 (2017).

(noting that "[a] motion to reconsider is insufficient to preserve an argument not previously presented unless the record establishes that the court had an opportunity to rule on the motion," and holding that the appellant had thus waived the issue raised because "[t]he record contains no indication that the motion was ever heard or decided, or that a hearing was ever requested thereon").  Since Twenty-Third Street neither specifically pled fraud or misrepresentation prior to trial, nor preserved its allegation of fraud and misrepresentation through its post-trial motion, we hold that the issue is waived.

### C.  Proof of Unpaid Rent Due and Owing from Mia

Lastly, Twenty-Third Street argues that the circuit court erred by declaring that it "failed to carry its burden of proving that there was unpaid rent due and ow[]ing from [Mia]." Specifically, Twenty-Third Street contends that apart from its evidence of rent due from the latter part of 2020 and early 2021, its evidence also demonstrated that Mia owed unpaid rent from 2019 and the early period of the COVID-19 pandemic in 2020, together with "late fees and administration fees."  It thus argues that "[u]nless the subject ruling [of no unpaid rent due and owing] simply arose out of the Exhibit 11 position, there is no supporting findings to have excluded the unchallenged computations of rent due."  We hold that this argument is without merit, for precisely the reason referenced by Twenty-Third Street and discussed above—that clear, unequivocal, and convincing evidence demonstrates that in the document contained in Exhibit 11, the parties agreed that after Mia paid certain funds between March and June, 2021, he would have a "[z]ero balance" going forward with respect to any arrears of rent.  Accordingly, we find no error by the circuit court in its ruling that Twenty-Third Street failed to meet its burden of proving any further rents due and owing from Mia.

## III.  CONCLUSION

For the foregoing reasons, we affirm the circuit court's dismissal of Twenty-Third Street's counterclaim.

*Affirmed.*